Scott McMillan (SBN 212506)
The McMillan Law Firm, APC
4670 Nebo Drive, Ste 200
La Mesa, CA 91941
T: 619-464-1500
F: 619-828-7399
E: scott@mcmillanlaw.us

Attorney for Plaintiff,
Lance Black

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lance Black, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>City of San Diego, San Diego Police Chief David Nisleit, Ryan Poole, Elizabeth Ortiz, Alyssa Tutterow, Christina Berg, Amy Buell, Katherine Jennings, Jardin Kiflinger, Austin Fowler, Kyle Valente, Jonathan Wells, Diego Usma, Jose Rodriguez, David Burns, and Doe 3-8, Doe 9-25, inclusive,<br><br>    Defendants. | Case No. 21cv1990-RBM-JLB<br><br>**PLAINTIFF LANCE BLACK'S OPPOSITION TO DEFENDANTS CITY OF SAN DIEGO, CHIEF DAVID NISLEIT, RYAN POOLE, ELIZABETH ORTIZ, ALYSSA TUTTEROW, CHRISTINA BERG, AMY BUELL, KATHERINE JENNINGS, JARDIN KILLINDER, AUSTIN FOWLER, KYLE VALENTE, JONATHAN WELLS, DIEGO USMA, JOSE RODRIGUES, AND DAVID BURN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:  Hon. Ruth Bermudez Montenegro<br>Court Room:  3B<br>Magistrate:  Hon. Jill L. Burkhardt<br>Chambers Rm.:  5140<br>Trial:  Not Set |

# Table of Contents

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     Summary of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    Standards on a Motion to Dismiss under 12(b)(6) . . . . . . . . . . . . . . . . . . . 4

IV.     Chief of Police David Nisleit has direct, personal liability. . . . . . . . . . . . . 5

V.      Christine Berg was present during much of the incident and has direct,
        personal liability as she was personally involved. . . . . . . . . . . . . . . . . . . . . 9

VI.     Plaintiff properly alleged his First Claim for Assault. . . . . . . . . . . . . . . . . 12

VII.    Plaintiff properly alleged his Second Claim for Battery. . . . . . . . . . . . . . . 13

VIII.   Plaintiff properly alleged his Third Claim for False Imprisonment. . . . . . . 14

IX.     Plaintiff properly alleged his Fourth Claim for Intentional Infliction of
        Emotional Distress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X.      Plaintiff properly alleged his Fifth Claim for Trespass to Chattels. . . . . . . 18

XI.     Plaintiff properly alleged his Sixth Claim for False Light. . . . . . . . . . . . . . 18

XII.    Plaintiff properly alleged his Seventh Claim for Invasion of Privacy. . . . . 19

XIII.  Plaintiff properly alleged his Eight Claim for violation for 18 USC § 1030.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XIV.  Plaintiff properly plead his Ninth Claim for Negligent Hiring, Training and
Supervision against Christina Berg and David Nisliet, subjecting the City to
Vicarious Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Count 1 - Negligence Per Se . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Count 2 - Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XV.   Plaintiff properly plead his Tenth claim for Negligence against all
Defendants.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XV.   Plaintiff properly plead his Eleventh claim for violation of the Bane Act,
Civil Code § 52.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XVI.  Plaintiff properly plead his Twelfth claim for violation of the Ralph Act,
Civil Code § 51.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XVIII.  Plaintiff properly plead his Twelfth claim for violation of Civil Code §
52.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XIX.  Plaintiff plead sufficient facts to support his 42 U.S.C. § 1983 claims. . . . 24
1.    Plaintiff does not suggestion that liability of any defendant is based
upon Respondeat Superior or *mere* Bystander Liability. . . . . . . . . . 24
A.    Supervisors may be held liable under § 1983 . . . . . . . . . . . . . 25
B.    Even non-supervisory officers have a duty to intercede. . . . . 25
2.   Plaintiff's Fourteenth Claim for False Arrest is valid. . . . . . . . . . . . . 26

3.   Plaintiff's Fifteenth Claim for Excessive Force is valid. . . . . . . . . . . 27

4.   Plaintiff's Sixteenth Claim for Unreasonable Search is valid. . . . . . . 29

5.   Plaintiff's Seventeenth Claim for Fabrication of Evidence is valid.. . . 29

6.   Plaintiff's Eighteenth Claim for Retaliation for Exercise of First
Amendment is valid. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XX.   Plaintiff adequately plead facts to support his Monell claims. . . . . . . . . . . 32

1.   Monell Policy or Custom (Nineteenth Claim). . . . . . . . . . . . . . . . . . . 34

2.   Monell Failure to Train (Twentieth Claim). . . . . . . . . . . . . . . . . . . . . 34

3.   Monell Supervisory Liability (Twenty-First Claim) . . . . . . . . . . . . . . 35

XXI.  Plaintiff adequately plead facts to support his Twenty Second and Twenty
Third Claims under 42 U.S.C. § 1985. . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXII.  Plaintiff adequately plead facts to support his Twenty-Fourth Claim under
42 U.S.C. § 1986.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XXIII.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**Table of Authorities**

Federal Decisional Authority

*Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 4

*Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . 5, 33

*Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013). . . . . . . . . . . . . . . . 31

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . 4, 33

*Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) . . . . . . . . . . . . . . . . 9

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Burlington Ins. Co. v. Vikramsinh Devdhara*, 2009 U.S. Dist. LEXIS 79613, at *17 (N.D. Cal. Sep. 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) . . . . . . . 26

*City of L.A. v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 85957, *34 (C.D. Cal. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) . . . . . . . . . . . . . . . . 16

*Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) . . . . . . . . . . . . . . . . 28

*Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) . . . . . . . . . . . . 25

*Duenez v. City of Manteca*, 2012 WL 4359229 (E.D. Cal 2012), . . . . . . . . . 33, 34

*Felder v. Casey*, 487 U.S. 131, 148 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gilbrook v. City of Westminster*, 177 F.3d 839, 856-857 (9th Cir. 1999) . . . . . . 24

*Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Godoy v. Brock*, No. 3:13-cv-0194-GPC-BGS, 2014 U.S. Dist. LEXIS 131882, at *14-15 (S.D. Cal. Sep. 18, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 27

*Green v. City and County of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Groh v. Ramirez*, 540 U.S. 551 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 4

*Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 7, 9

*Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 29

*Kyles v. Whitley*, 514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012) . . . . . . . . . . . . . . . . . 27

*Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006) . . . . . . . . . 9

*Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp.2d 890, 899 (N.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Melvin Brown II v. City of San Diego, etc., et al.*, U.S.D.C. So. Dist., Cal. 17cv0600-H-WVG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) . . . . . . . . . . . . 25

*Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Moss v. U.S. Secret Serv.*, 711 F.3d 941, 967 (9th Cir. 2013) . . . . . . . . . . . . . . . 25

*Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*P.B. v. Koch*, 96 F.3d 1298, 1303-04 & n.4 (9th Cir. 1996) . . . . . . . . . . . . . . . . 14

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . 25

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) . . . . . . 4

*Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006) . . . . . . . . . . . . 32

*Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002) . . . . . . . 26

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) . . . . . . . . . . 23

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . 4, 5, 33

*Thomas v. Dillard*, 818 F.3d 864, 889-90 (9th Cir. 2016). . . . . . . . . . . . . . . . . 28

*Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . 5

*U.S. v. Koon*, 34 F.3d 1416, 1447 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . 23

*United States v. Xanthe Lam*, No. CR 18-00527 WHA, 2019 U.S. Dist. LEXIS 219292, at *7 (N.D. Cal. Dec. 19, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024-26 (9th Cir. 2015) . . 28, 31

*Watkins v. U.S. Army*, 875 F.2d 699, 722 (9th Cir. 1989) . . . . . . . . . . . . . . . . . 36

*Whren v. United States*, 517 U.S. 806 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wood v. Moss*, 572 U.S. 744, 134 S. Ct. 2056, 188 L. Ed. 2d 1039 (2014) . . . . . 25


Federal Statutory Authority

Federal Rule of Civil Procedure  8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

<u>California Decisional Authority</u>

*Alejo v. City of Alhambra,* 75 Cal.App.4th 1180, 1185, fn. 3 (1999). . . . . . . . . 20

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994). . . . . . . 13

*B.H.v. County of San Bernardino*, 62 Cal.4th 168 (2015) . . . . . . . . . . . . . . . . . 20

*Cabral v. Cty. of Glenn*, 624 F. Supp. 2d 1184, 1193-94 (E.D. Cal. 2009) . . . . . 24

*Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 592 (1979) . . . . . . . . . . . . . . . . . 16

*de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 252 (2007) . . . . . . . . . 21

*Du Lac v. Perma Trans Products, Inc.,* 103 Cal.App.3d 937 (1980) . . . . . . . . . 16

*Farmers Insurance Group v. County of Santa Clara*, 11 Cal. 4th 992, 1022(1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 583-85 (1970). . . . . . . . . . . . . . . . 21

*In re B.L.*, 239 Cal. App. 4th 1491, 1496 (2015). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kockelman v. Segal*, 61 Cal.App.4th 491, 499 (1998). . . . . . . . . . . . . . . . . . . . . 22

*People v. Brendlin*, 38 Cal. 4th 1107 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Nabong*, 115 Cal.App.4th Supp. 1 (2004) . . . . . . . . . . . . . . . . . . . . . 15

*People v. Saunders*, 38 Cal. 4th 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004) . . . . . . . . . . . . . . . . . . . 13

*Rodriguez v. Inglewood Unified School Dist.*, 186 Cal. App. 3d 707 (1986) . . . 21, 22

*Sanchez-Scott v. Alza Pharmaceuticals*, 86 Cal.App.4th 365, 372 (2001) . . . . . . 19

*So v. Shin*, 212 Cal.App.4th 652, 668-669 (2013). . . . . . . . . . . . . . . . . . . . . . . . . 12

*Weirum v. RKO General, Inc.*, 15 Cal.3d.40, 49 (1975) . . . . . . . . . . . . . . . . . 21, 22

California Statutory Authority

Civil Code § 51.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Civil Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Civil Code § 52.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Evidence Code § 669. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Gov. Code §§ 810-999.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Government Code § 815.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Penal Code § 118.1, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Penal Code § 148((a) (1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Penal Code § 243(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Penal Code § 836(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Vehicle Code §§ 4456(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Other

5 Witkin, Torts, § 673, p. 988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CACI 1401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Prosser & Keeton, Torts (5th ed. 1984) § 9, pp. 39–40, italics added, fns. omitted.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rest.2d, Torts § 625E, Comment b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO.
BEFORE TRIAL (The Rutter Group), §9:214.4 . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.  Introduction

Plaintiff Lance Black, a black man, was tracked by the defendants as part of their racial profiling policy, and despite operating his vehicle lawfully, was stopped, abused, punished for asserting his First Amendment rights, battered, had his vehicle and contents searched, including his scripture notes read, pressed with false charges, subjected to an overt conspiracy which portions of the discussions were caught on body worn camera, then taken to the police station where the defendants further burnished their false narrative, then he was taken to jail and rather than being booked and released, the defendants importuned the jailor to hold him, only to have the prosecutor decline to file any charges. Mr. Black was harmed, and grievously so.  Audaciously, by their motion to dismiss, Defendants tell this Honorable Court that their behavior is acceptable.

The City of San Diego and the individual police defendant's motion to dismiss misses the mark. Plaintiff's' First Amended Complaint contains sufficient facts to support a plausible claim for relief as to each of the individually named Defendants, the City's liability under the California Government Code,  and also contains specific facts to support Plaintiff's *Monell* claims.[1]

## II.  Summary of Facts

Plaintiff Lance Black, a mature black man, was followed by the San Diego Police Poole and Ortiz for over seven blocks while he was lawfully operating his recently purchased vehicle a 2017 Infinity QRX 4. [Doc. 39, FAC ¶7, 8] Although his

---

[1]Defendants take liberties with the text of the complaint, omitting key facts, alleging matters not within the complaint, and recasting it in a manner inconsistent with fact, and both Rule 1 and Rule 11 of the Federal Rules. Nothing more is required at this stage in the litigation. Defendants' motion should be denied in its entirety.

Replete within the motion is the Defendants' suggestion that state claims are "subsumed" by federal claims.  Or, that somehow a negligence claim is "subsumed" by an intentional tort.   Defendants cite no authority for their "subsumed claim" proposition. Each of Plaintiff's claim has different elements, different damages, and different standards.

vehicle conspicuously displayed a tempoary operating permit, which Poole and Ortiz should have seen prior to the stop due to their vantage point alongside his vehicle, Mr. Black was pulled over on a pretext that his license tags were expired.[Doc. 39, FAC ¶12] Mr. Black complained and demanded a supervisor. [Doc. 39, FAC ¶12] In the words of Defendant Sergeant Christina Berg, Mr. Black "got lippy." [Doc. 39, FAC ¶30, 34, 35]

Other officers arrived on the scene, including the defendant officers. Defendant Jardin Killinger approached Mr. Black, while the other defendant officers surrounded Mr. Black's vehicle, and stood at his window taunting him. [Doc. 39, FAC ¶16, 18, 19, 22, 23] Mr. Black made a video of Killinger and told him to stop touching his vehicle. [Doc. 39, FAC ¶22, 23] Killinger took exception to Mr. Black filming him and struck the phone from Mr. Black's hand. [Doc. 39, FAC ¶23, 28]Then Killinger and other defendants pulled Plaintiff from his vehicle. [Doc. 39, FAC ¶26, 28]

San Diego Police Officers do not appreciate a black man getting "lippy". [Doc. 39, FAC ¶30, 34, 35] Despite the utter lack of a basis for any arrest, let alone an extended traffic detention, Mr. Black was removed from his vehicle by force, was taken to the ground by force, and had handcuffs placed on him in a manner to cause pain. [Doc. 39, FAC ¶ 26, 28, 31, 36] His cell phone that he was recording the interaction with was taken and the video erased. [Doc. 39, FAC ¶30] Mr. Black was restrained and his undergarments were exposed before gathering onlookers. [Doc. 39, FAC ¶31] When he complained about the pain from the handcuffs, he was told that handcuffs are not supposed to be comfortable. [Doc. 39, FAC ¶36] One defendant, Austin Fowler, a black man himself, told Plaintiff that he had the wrong attitude. [Doc. 39, FAC ¶39]

While he was sitting in the back of the patrol car, the defendant officers that used such force and Sergeant Christina Berg convened to concoct a story. [Doc. 39, FAC ¶48, 50] They turned off their body worn cameras while they decided

upon their false narrative to justify what was obviously an unjustified stop, unjustified extended seizure and unjustified use of force, and an unjustified arrest based on false charges. [Doc. 39, FAC ¶44]  An officer conscientious of their duties to maintain the law might have decided to avoid compounding the problem, and simply released Mr. Black.  But these officers were not conscientious, particularly towards "lippy" black man Plaintiff Lance Black.

Once Lance Black was seated in the patrol vehicle, the defendants proceeded to search Lance Black's vehicle and its contents. [Doc. 39, FAC ¶41, 42]  Defendants searched the engine compartment, the trunk compartment, the interior of the vehicle, the gas tank, and rifled through the contents of the vehicle, and opened Black's Bible and read this scripture notes. [Doc. 39, FAC ¶42] Much to their dismay, Defendants found no contraband or other material to justify charges.

Sergeant Berg designated Defendant Ryan Poole to be the "arresting officer", for the false charges of assault on a police officer, despite the fact that Poole was not in a position to view the alleged assault. [Doc. 39, FAC ¶44] The alleged victim of the "assault", defendant Jardin Killinger was later interviewed by Poole and Defendant Ortiz, and responded to their questions in a jovial manner. The charge sheet required repeated falsified corrections to bolster the false narrative in order to provide a basis for an arrest. [Doc. 39, FAC ¶50, 51]

Mr. Black was delivered to the San Diego County Jail. [Doc. 39, FAC ¶50] When the jailor indicated to Poole and Ortiz that Mr. Black was to immediately booked and released, Ortiz made a call to make certain that Mr. Black was booked into the jail and held. [Doc. 39, FAC ¶53] It was only there where his handcuffs were able to be removed. [Doc. 39, FAC ¶54] Lance Black was booked into the San Diego County Jail, where he spent the night. [Doc. 39, FAC ¶55]

Plaintiffs counsel caused to be delivered a letter demanding preservation of the documents and evidence related to Mr. Black's interaction with defendants on

November 3, 2020. [Doc. 39, FAC ¶64]  Plaintiff's counsel's legal assistant was threatened with arrest by Defendant Nigra for merely attempting to deliver the notice. [Doc. 39, FAC ¶64]

The City Attorney for the City of San Diego declined prosecution of the false charges, which Mr. Black only discovered once he showed up for his arraignment. [Doc. 39, FAC ¶65]

**III.    Standards on a Motion to Dismiss under 12(b)(6)**

When a complaint's allegations are capable of more than one inference, the Court must adopt whichever inference supports a valid claim. *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010); see also Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group), §9:214.4.

The Court is required to read the complaint charitably and must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). This rule of liberal construction is "particularly important in civil rights cases." *Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000). The dominant characteristic of civil rights actions is that "they belong in court." *Felder v. Casey*, 487 U.S. 131, 148 (1988).

The Court does not inquire whether the plaintiff will ultimately prevail, only whether he is entitled to offer evidence to support his claims. *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *Burlington Ins. Co. v. Vikramsinh Devdhara*, 2009 U.S. Dist. LEXIS 79613, at *17 (N.D. Cal. Sep. 2, 2009).

Further, Plaintiff does not need to plead detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to avoid a Rule 12(b)(6) dismissal, a complaint need only plead enough facts to plausibly suggest an entitlement to relief – such that it is not unfair to require the opposing party to defend the action. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiff is

not required to make out a prima facie case. *City of L.A. v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 85957, *34 (C.D. Cal. 2014).

Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Factual challenges to the complaint have no bearing on the legal sufficiency of the allegations. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

In deciding whether a complaint states a claim fo relief, two principles apply:

> (1) To be entitled to the presumption of truth, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.
> (2) The factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr*, *supra*, 652 F.3d at 1216; *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp.2d 890, 899 (N.D. Cal. 2013).

Further "[n]ormally, the question of whether a policy or custom exists would be a jury question." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

## IV.    Chief of Police David Nisleit has direct, personal liability.

Chief of Police David Nisleit and the City of San Deigo are the final policy making authority. [FAC ¶135.] Nisleit had a duty ot train and supervise the defendant officers. [FAC ¶136.] Nisleit had prior notice of the inadequacy of the training programs and supervision protocols. [FAC ¶137.] The individual defendants' conduct with Mr. Black demonstrated that they were unfit and incompetent to work as peace officers prior to coming in contact with Mr. Black, and Nisleit failure to train on basic police functions and supervise the officers breached the duty owed to Mr. Black.  [FAC ¶¶ 138, 139.] Nisleit failed to follow minimum standards for POST in investigating candidates for police officers. [FAC

¶ 140.]   Had Mr. Nisleit done the job he was required to do, Plaintiff would not have been harmed. [FAC ¶¶ 141 (background investigation to weed out those with poor impulse control), ¶142 (interviewing candidates to avoid hiring Killinger or promoting Berg), ¶143 ((a)failure to impose standards to not engage in racist conduct against black people as required under the 13th and 14th Amendment to the U.S. Constitution, (b) valid registration of vehicles, (c) requirements to refrain from racial profiling, (d) requirements on use of force under California's penal code, (e) Fourth Amendment standards on use of force and searches, (f) use of force requirements under Government Code, (g) requirements for lawful searches under the Fourth Amendment, (h) requirements to refrain from fabricating evidence under the 14th Amendment, (i) requirements to preserve evidence under the 14th Amendment, (j) requirements to preserve and turn over evidence under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995), (k) requirements of Penal Code § 836(a) that a misdeameanor arrest must be personally witnessed by the arresting officer, (l) the requirments of the First, Fourth, Fifth, and Fourteenth Amendment that videotaping and harsh words do not provide a basis for arrest, seize, search, torture, falsely charge, and confine without due process, (m) methods of de-escalation as published by POST, (n) requirements of report writing, (o) proscriptions against false reports provided by Penal Code § 118.1, and finally (p) requirements on the use of body worn cameras and not turning them off.]

In sum, Defendant Nisleit disregarded these duties and as set forth in those same paragraphs, as a consequence, Plaintiff Lance Black was harmed. [Id.] Because these topics were omitted from the training programs, the known and obvious consequences were that black persons would be taunted and provoked, that their First Amendment protected expression would be retaliated against, that their Fifth Amendment right to refrain from speaking to police would result in retaliation, and that the police would use excessive forces and subject innocent

victims such as Plaintiff to unlawful searches, that the police would fabricate evidence, conceal evidence, refuse to interview third-party witnesses, all of which would cause police to violate the constitutional rights of persons such as Plaintiff. [FAC ¶ 144.] Plaintiff alleges that Nisleit engaged in culpable action, or a failure to act, i.e., inaction. Because Nisleit took no steps to remedy despite the knowledge of credible instances of persons' stattuory and constitutional rights, that conduct was intended. [FAC ¶ 144.]

Supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (italics in original). Rather, a plaintiff must establish that each individual "Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* In other words, supervisory officials "cannot be held liable unless they themselves" violated a constitutional right. *Id.* Thus, supervisory liability can be imposed only if (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal citations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (citations omitted).

Plaintiff submitted a tort claim with the City of San Diego identifying the circumstances set forth in the complaint. [FAC ¶ 66]   That tort claim gave notice of the circumstances of the harm that Plaintiff suffered at the hands of the individual defendants. [FAC ¶ 67] Defendant Nisleit made a "conscious, affirmative choice to ratify the conduct of the individual defendants" by concealing the public records, and allowing the denial of the tort claim by operation of law. [FAC ¶ 66] The individual defendants were not counseled, retrained or disciplined regarding their racist, vindictive, malevolent and fraudulent treatment directed at plaintiff. [FAC ¶ 66]   No new policies have been effected to avoid the same treatment being directed at another similarly situated person as plaintiff. [FAC ¶ 66]

This was not the first such incident where San Diego Police Officers abused an arrestee and falsely concocted charges to support their malevolent, unlawful conduct.[FAC ¶ 137.]   Plaintiff cited to prior cases where the City of San Diego was placed on notice of the unlawful policies of using excessive force, fabricating evidence, and making false arests.  On October 30, 2018 in *Melvin Brown II v. City of San Diego, etc., et al.*, U.S.D.C. So. Dist., Cal. 17cv0600-H-WVG, San Diego Police officers were denied qualified immunity for false arrest, excessive force and fabricating evidence, and settled the case shortly thereafter. [FAC ¶ 137 (a-b).] Certainly that information contained in the complaint was credible, notwithstanding any later agreement to not litigate the Monell claims. Nislet and the City of San Diego did not take heed and change their policies, standards, practices, conduct, training, or supervision. [FAC ¶ 137 (b).]

Likewise, in *McNally v. Riis*, U.S.D.C. Southern District of California, Case No. 18cv1150-BEN-AGS, where a SDPD officer used excessive force, fabricated evidence, committed a false arrest, resulting in a $1.5 Million dollar verdict in the plaintiff's favor on October 30, 2020, which was followed by an award of $1 Million in attorneys fees. [FAC ¶ 137 (c-e).]   There was no reprimand or

investigation of the officer, or training program for the violation of Mr. McNally's constitutional rights. [FAC ¶ 137 (e).]   But for the existence of this harmful custom and practices of the defendants, including Mr. Nisleit, Plaintiff would not have been harmed. [FAC ¶ 137 (h).]

The Ninth Circuit has found that "lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." *Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006). The lack of policy must be the moving force behind that constitutional injury. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury. *Long*, 442 F.3d at 1189. Plaintiff must allege that the injury could have been avoided had proper policies been implemented.  Within the cited paragraphs, Plaintiff set forth all of those well-founded allegations.

**V.      Christine Berg was present during much of the incident and has direct, personal liability as she was personally involved.**

Supervisory liability can be imposed if the supervisor was personally involved in the constitutional deprivation.  *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  Under the integral participant rule, "an officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can . . . be a 'full, active participant' in the search" and therefore can be subject to § 1983 liability. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009), *citing Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) (emphasis added).

The analysis for Sergeant Berg is simpler as she was directly involved in the incident and took an active part in the use of excessive force, the unlawful and constitutionally unreasonable search of Plaintiff's vehicle, and coordinating a conspiracy to create false, unsubstantiated charges against Plaintiff Lance Black.

It is apparent that opposing counsel simply ignored not only the plain language of the pleading, but the BWC footage that the defendants provided Plaintiff's counsel. Berg joined in the conduct against Plaintiff as it was occurring. [FAC ¶¶ 33-45.]

The complaint alleges that Christina Berg arrived on the scene, that she as a supervisor had extensive education and experience in the policies of the City of San Diego as to the practices regarding traffic stops, the vehicle code, the protocols regarding investigation, arrests, searches, use of force, such that her conduct manifested the policies which were the cause in fact of the constitutional and statutory violations. [FAC ¶ 33.] Berg had the ability to investigate and mitigate Black's injuries, stop the battery, and false imprisonment, and to prevent the search of Black and his vehicle. [Id.] Plaintiff alleges that Berg's actions were in furtherance of the conspiracy to deprive Plaintiff of his constitutional rights substantially motivated because he was black. [Id.]

Berg did learn that Plaintiff had been stopped, and had suffered the police officer's use of force. Berg suggested, without justification, that Plaintiff got "lippy". This dismissal of a citizen's complaint of conduct that violated Plaintiff's rights reflects an animus against exercise of the rights, and the choice of words suggests a racist motivation. [FAC ¶ 34.] Berg found the audacity that Plaintiff had requested a supervisor humorous, and used colorful terms in expressing that humor: "No I heard it come out and it was like you want another unit I'm like he asked for a fucking sergeant." [Id.] Thus, whether or not she was the officer's specific supervisor, [Memo. at 8.] Berg understood and herself accepted that she was there in a supervisory role.

Berg suggested, as part of the false narrative that she herself began to spin to as a justification for the use of force against Plaintiff that Plaintiff was "being aggressive . . . fighting." This was not true, and there was no basis for suggesting it. In concocting the false charges against Plaintiff, Berg set in motion a series of

acts that inflicted a constitutional injury. [FAC ¶ 35.] Plaintiff complained that the handcuffs were too tight, and Poole in Berg's presence stated that the handcuffs were not supposed to be comfortable. [FAC ¶ 36.] Thus, Berg knew that her subordinates were using the handcuffs to harm rather than merely control. Despite Poole admitting that Plaintiff had not resisted, Berg watched Poole tighten the handcuffs and heard Plaintiff's complaint. [FAC ¶ 36, 37.] Inspecting them, Berg then falsely claimed that the handcuffs were "stuck" and would have to be cut off. In fact, as later determined at the jail, the handcuffs were not stuck [FAC ¶ 54.] In Berg's presence, defendant Fowler stated to Plaintiff "this has to do with attitude. This is what happens to people with bad attitudes." [FAC ¶ 39.] Berg did not intervene. "Attitude," or complaining about police abuse, is protected by the First Amendment, and not the proper basis for retaliation by misuse of handcuffs. [FAC ¶ 40.] In the presence of Berg, Plaintiff was confined to the rear seat of the police car. [FAC ¶ 41.] In Berg's presence, Plaintiff's vehicle was thoroughly searched in an effort to find a justification for the defendants' mistreatment of Plaintiff. Plaintiffs' Bible study scripture notes were read by defendant Wells. [FAC ¶ 42.] In Berg's presence, Ortiz told another officer that Plaintiff had been stopped for expired registration and had started yelling at the officers. Not, as according to the false narrative initiatiated by Berg that Plaintiff was "being aggressive" or fighting. [FAC ¶ 43.] That provided Berg notice that the false narrative that she had initiated was unsubstantiated, and would be determined as such.

Sergeant Christina Berg called a meeting. The body cameras were turned off to conceal the contents of the discussions. During this meeting Berg and the other individual officers concocted a story to justify what were to be the false charges of Penal Code sections 148((a) (1) and 243(c)(1). [FAC ¶ 44.] Berg contacted a lieutenant on her cellular phone for further ratification of the conspiracy to deny Plaintiff his constitutional rights. [Id.] Before sending Plaintiff

1 off to his ultimate destination of jail, Berg was informed that the temporary title
2 documents had been located. [FAC ¶ 45.]   Berg knew that Plaintiff was lawfully
3 operating his vehicle, and that Black had not unlawfully impeded or assaulted an
4 officer.

5 **VI.    Plaintiff properly alleged his First Claim for Assault.**

6 "The essential elements of a cause of action for assault are: (1) defendant
7 acted with intent to cause harmful or offensive contact, or threatened to touch
8 plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she
9 was aboutto be touched in a harmful or offensive manner or it reasonably appeared
10 to plaintiff that defendant was about to carry out the threat; (3) plaintiff did
11 notconsent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's
12 conduct was a substantial factor in causing plaintiff's harm." (*So v. Shin*, 212
13 Cal.App.4th 652, 668-669 (2013).)

14 Within that count, incorporated by reference, is reference to Plaintiff's claim
15 of conspiracy "to harm to harm Plaintiff by causing injury to his person and
16 property and deprive him of his civil and constitutional rights substantially
17 motivated because he was black. . .", [FAC ¶ 6.]  The facts alleging that
18 conspiracy are set forth throughout the complaint, i.e., that defendants turned off
19 their BWC contrary to City of San Diego policy, [¶ 6,] that defendants stopped
20 Plaintiff without warrant or probable cause because he was driving a nice car,
21 wearing jewelry, while black. [FAC ¶¶ 8, 9.]  That Killinger and Fowler joined the
22 conspiracy, and Killinger grabbed the Plaintiff's telephone while he was
23 recording. [FAC ¶ 23.]  That Plaintiff was removed from the car by Killinger, and
24 four other defendants. [FAC ¶ 28.] Which four of those named will be determined
25 in discovery.  That Plaintiff's video of the stop was deleted. [FAC ¶ 30.] That
26 plaintiff was thrown to the ground by Fowler, Burns, Buell, Valente, Wells, and
27 Rodriguez. [FAC ¶ 31.]

28

As the California Supreme Court explained in *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994):

> "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation omitted] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [ ]  In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

(*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).)

Here, because there are plausible facts suggesting the existence of a conspiracy, all defendants named within the allegations are to be held liable for the assault and the other claims that are directed against the individuals.

**VII.    Plaintiff properly alleged his Second Claim for Battery.**

> "'"A battery is any intentional, unlawful and harmful contact by one person with the person of another. … A harmful contact, intentionally done is the essence of a battery. … A contact is "unlawful" if it is unconsented to. …' [Citation.] The elements of a civil battery are: ' "1. Defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; [¶] 2. Plaintiff did not consent to the contact; [and] [¶] 3. The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff." '

*Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (2004).

Under California law:

> "[I]f all other requisites of a battery against the plaintiff are satisfied, contact with the plaintiff's clothing, or with a cane, a paper, or any other object held in the plaintiff's hand, will be sufficient … . The interest in the integrity of [the] person includes all those things which are in contact or connected with the person."

*In re B.L.*, 239 Cal. App. 4th 1491, 1496 (2015), citing  Prosser & Keeton, Torts (5th ed. 1984) § 9, pp. 39–40, italics added, fns. omitted.).

Plaintiff alleged battery against Defendants City of San Diego, Ryan Poole, Amy Buell, Katherine Jennings, Alyssa Tutterow, Christina Berg, Jardin Killinger, Austin Fowler, Kyle Valente, Jonathan Wells, Diego Usma, Jose Rodriguez, David Burns, Doe 6-8, inclusive. [FAC ¶ 77-84.]

Plaintiff alleged intentional, harmful contact with respect to Killinger at ¶ 19 (touched car), at ¶21-23 (knocked cell phone out of Black's hand), and at ¶ 28 (grabbed Black). Plaintiff alleged intentional, harmful contact with respect to Amy Buell, Katherine Jennings, Alyssa Tutterow, Austin Fowler, Kyle Valente, Jonathan Wells, Rodriguez, David Burns in throwing Black to the ground and the scrum that followed. [FAC ¶ 31.]

Plaintiff has alleged that Diego Usma, was present and deactivated his body camera. That whether he is depicted with certainty in the BWC footage is immaterial, as Plaintiff has alleged that Usma came in contact. Besides, he was part of the conspiracy. Where he actually came into the scrum is not clear, but the extent that the complaint needs to be amended to so reflect Plaintiff so requests.

Defendants' allege that "mere use of handcuffs" is insufficient, Memo., p. 9., but mere use was not the only issue. The handcuffs were gratuitiously tightened. Moreover, a white person would simply have been written a ticket and released. Defendants wanted to teach a "lippy" black man a lesson.

Contrary to the suggestion of the Defendants, Memo., pg. 9, Plaintiff did not request that Poole tighten the handcuffs. The handcuffs were tightened by the other defendants, and then by Poole, so severly that they could not be removed. Further, where there is no need for force, any force is constitutionally unreasonable. *P.B. v. Koch*, 96 F.3d 1298, 1303-04 & n.4 (9th Cir. 1996).

Defendants citation to *Godoy v. Brock*, No. 3:13-cv-0194-GPC-BGS, 2014 U.S. Dist. LEXIS 131882, at *14-15 (S.D. Cal. Sep. 18, 2014), is inapposite. That case was determined on a motion for summary judgment, not a motion to dismiss.

**VIII. Plaintiff properly alleged his Third Claim for False Imprisonment.**

Plaintiff Lance Black has plead that he was seized [FAC § 9, 12,18, 26, 55], was not free to leave [§ 9, 12, 18, 26, 41] was placed up against his vehicle [§ 28, 31] that he was confined to a patrol car [§ 31] that he was taken in handcuffs to a police station [§ 31, 36, 41, 47, 48] that he was taken to jail [§ 47, 53] that the

prosecutor declined to prosecute [§ 53, 55, 65] that Mr. Black suffered harm [§ 13, 17, 23, 24, 28, 29, 31, 36, 41, 45, 54, 55, 59, 63] and that the charges were false [§ 12, 18, 19, 23, 27, 29, 35, 39, 42, 44, 47, 48, 50, 51]   Plaintiff alleges that this took place as part of the conspiracy. [102].

Defendant simply ignore the allegations in the complaint where each of these defendant restrained Plaintiff. [FAC, ¶ 18, 23, 28, 29, 31, 35]

As the California Supreme Court held in *People v. Brendlin*, 38 Cal. 4th 1107 (2006): "It is well settled that the driver of a vehicle that is the subject of a traffic stop is seized within the meaning of the Fourth Amendment. (*Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L. Ed. 2d 89, 116 S. Ct. 1769], *Id*., at 1114.

It is also well settled that a motorist may operate their vehicle with temporary identification displayed in the window. (Cal. Vehicle Code §§ 4456(c), 4606, 5204.)

In *People v. Nabong*, 115 Cal.App.4th Supp. 1 (2004)  the appellate panel held that stop of vehicle with expired license tags but displaying a valid permit, without any additional facts other than officer's distrust of the permit, violated the Fourth Amendment. (*Id.*, 3-5.)

Mr. Black plead that he was driving his car which he had purchased 61 days prior, with the requisite operating permit affixed under the front windshield. [FAC ¶ 7.]  Plaintiff has plead that the Defendants maneuvered their car along-side Plaintiff's vehicle at a stop light and made a decision to stop Plaintiff. [FAC § 8.] The reasonable inference from these allegation is that the (1) the decision to stop Plaintiff was made while in a position to see the operating permit, and (2) that the expired registration tags viewed later did not provide the basis as it was clear from the outset that an operating permit was present.

The proper jury instruction for False Imprisonment claim is CACI 1401. To establish such a claim against an officer a plaintiff merely must establish: (1) That

the defendant arrested the plaintiff without a warrant; (2) That plaintiff was actually harmed; and (3). That defendant's conduct was a substantial factor in causing plaintiff's harm. CACI 1401.

A person is liable for false imprisonment if he or she " 'authorizes, encourages,directs, or assists an officer to do an unlawful act, or procures an unlawful arrest, without process, or participates in the unlawful arrest . . . .' ." *Du Lac v. Perma Trans Products, Inc.* (1980) 103 Cal.App.3d 937, 941. Where a defendant "knowingly [gives] the police false or materially incomplete information, of a character that could be expected to stimulate an arrest" . . . "such conduct can be a basis for imposing liability for false imprisonment." *Id.* at p. 942.

"It has long been the law that a cause of action for false imprisonment is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages. Upon proof of those facts the burden is on the defendant to prove justification for the arrest." *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 592 (1979).

Further, Killinger falsely claimed of being assaulted by Plaintiff thereby justifying the arrest on the charge of "assault on a peace officer." [¶ 19, 22, 23, 44, 46, 50] Thereby putting in motion the chain of events that led to further false imprisonment.

The Defendants' motion is inconsistent as to the law, reflecting a lack of good faith. Defendants cite at page 9 of their Memo. *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007), in challenging the battery claim for the proposition ". . .[i]n a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force." Here, more force was used than was necessary. Plaintiff was removed from his vehicle by force, thrown up against his vehicle by force, and taken to the

ground by force.  The handcuffs were gratuitously tightened because of his

attitude.

Obviously, if there was no reasonable suspicion, which there wasn't as the

entire narrative that formed the basis for the arrest was false [FAC ¶¶ 7, 8, 9, 12,

18, 22, 26, 27, 29, 31,  39, 42, 44, 46, 47, 48, 51, 55].

The cases cited by Defendant's are inapposite.  While Poole and Ortiz may

have been privileged to conduct a non-pretextual traffic stop to the extent that they

believed, in good faith, that there was a commission of a crime, or a vehicle code

violation, that disappeared when it was clear that there was a temporary operating

permit for the vehicle.

*People v. Saunders*, 38 Cal. 4th 1129 was decided on the basis of a missing

front license plate. (*Id*., p. 1136.)  Any benefit of *Saunders* to defendants

disappears in light of the case that followed two years later.

In *People v. Hernandez*, 45 Cal. 4th 295 (2008) the California Supreme

Court approved the reversal of a conviction in light of a warrant-less stop where

the defendant drove without any license plates but with a temporary operating

permit. There, the defendant refused to get out of the vehicle and the arresting

officer sprayed Hernandez with pepper spray, and then pulled him from the

vehicle and handcuffed him and arrested him.  *Id.*, 298.

In *Hernandez*, the court explained that ". . .in *Saunders* the officer

confronted an anomalous situation. The pickup had one license plate and a

temporary permit. Under DMV regulations, those circumstances would appear to

be mutually exclusive. As a result, the officer had ample justification to stop the

truck to investigate." *People v. Hernandez*, id., 45 Cal. 4th 295, 300.

In the presence of a temporary operating permit, so long as there are both

plates affixed, or no plates, there is no "particularized suspicion" to effect a traffic

stop. See, *People v. Hernandez*, id., 45 Cal. 4th 295, 300-01.

Plaintiff plead that the temporary operating permit was conspicuously displayed on the windshield. [FAC ¶¶ 7, 12, 18.] Plaintiff plead that the defendants knew of the temporary operating during their search, as Defendant Berg was told this. [FAC ¶ 45.] Yet, despite knowing that the underlying basis for their search, and what set in action the entire course of events was based upon a false premise, Black was still taken to jail and his imprisonment continued.

Ignoring that there was no basis for the stop to begin with, that Lance Black was ordered from his vehicle [FAC ¶8, 26], taken to the ground [¶ 31], handcuffed [¶ 31, 36], placed in the back of a patrol car [FAC ¶ 31, 41, 48], taken to the police station [FAC ¶ 41, 45, 47, 48, 53], and then taken to jail where he spent the night [¶ 47, 53], Defendant's argue that Mr. Black consented and had a "consensual contact." [Memo., p. 10, ECF 46-1, p. 16.] No. Plaintiff was doing what a reasonable person will do - acknowledge intended compliance.

**IX.  Plaintiff properly alleged his Fourth Claim for Intentional Infliction of Emotional Distress.**

Plaintiff incorporates the arguments above by reference and agrees with the recitation of the elements of tort of intentional infliction of emotional distress. The allegations plead satisfy such elements.

**X.  Plaintiff properly alleged his Fifth Claim for Trespass to Chattels.**

Plaintiff incorporates the arguments above by reference and agrees with the recitation of the elements of tort of trespass to chattels.  The allegations plead satisfy such elements.

**XI.  Plaintiff properly alleged his Sixth Claim for False Light.**

The tort of invasion of privacy, based upon placing the plaintiff in a false light, requires a showing that the plaintiff was " 'given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position.' " (5 Witkin, Torts, § 673, p. 988, citing Rest.2d, Torts § 625E, Comment b.).  The summary for those

allegations setting forth the elements is set forth in the claim. [FAC ¶¶ 17, 18, 31, 110.] This took place as part of a conspiracy between the defendants. [Id.]

**XII.   Plaintiff properly alleged his Seventh Claim for Invasion of Privacy.**

"'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.' " *Sanchez-Scott v. Alza Pharmaceuticals*, 86 Cal.App.4th 365, 372 (2001). The plaintiff " 'must show that the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.' " (*Ibid*.)

Plaintiff alleged in the course of the conspiracy, that the defendants accessed his computer, destroyed his data, and read his private writings in his vehicle. [FAC ¶¶ 24, 25, 28, 29, 30, 42, 118, 119, 120.]

**XIII.  Plaintiff properly alleged his Eight Claim for violation for 18 USC § 1030.**

Only defendants know which of them deleted the data from the cell phone. That is within their particular knowledge.  However, it was certainly Killinger that removed the phone from Plaintiff's possession. [FAC ¶¶ 23, 24, 25.] While section 1030 may only provide relief against a "violator," the Defendants cite no authority that supports the proposition that only one person can be sued as the violator. the negates the effect of a conspiracy. Plaintiff plead such a conspiracy. [FAC ¶ 127.] The statute contemplates the exb istence of conspiracies. 18 U.S.C. § 1030(b) states, "Whoever conspires to commit or attempts to commit an offense under subsection (a) of this section shall be punished as provided in subsection (c) of this section." *United States v. Xanthe Lam*, No. CR 18-00527 WHA, 2019 U.S. Dist. LEXIS 219292, at *7 (N.D. Cal. Dec. 19, 2019)

**XIV. Plaintiff properly plead his Ninth Claim for Negligent Hiring, Training and Supervision against Christina Berg and David Nisliet, subjecting the City to Vicarious Liability.**

**Count 1 - Negligence Per Se**

Contrary to the argument of opposing counsel, Plaintiff set forth more than 120 paragraphs preceding paragraph 132 of the FAC explaining why the individual defendants were unqualified to act as police officers according to California Government Code §1031. Accepting the allegations and reasonable inferences as true, as the court must at this stage, agree that only clearly incompetent and unqualified officers would have engaged in the conduct that the individual defendants, including Sergeant Berg engaged in. Defendants' counsel knows this as well as the City has the body camera footage.

**Count 2 - Negligence**

Plaintiff plead 15 paragraphs, numerous sub-paragraphs, encompassing 17 pages of the complaint identifying duties imposed by law, and the defendants' breaches of those duties, and setting forth how those breaches resulted in harm to the Plaintiff. [FAC ¶ 133-148.]

The Tort Claims Act (Gov. Code §§ 810-999.6) provides that public entities may be liable for failing to perform mandatory duties imposed by enactment if the resulting harm is the kind of harm against which the enactment was designed to protect. Cal. Gov. Code § 815.6. "Courts have recognized that as a practical matter the standard for determining whether a mandatory duty exists is 'virtually identical' to the test for an implied statutory duty of care under Evidence Code section 669." *Alejo v. City of Alhambra,* 75 Cal.App.4th 1180, 1185, fn. 3 (1999), disapproved on other grounds in *B.H. v. County of San Bernardino*, 62 Cal.4th 168 (2015) internal citations omitted . Evidence Code section 669 states:

(a) The failure of a person to exercise due care is presumed if:
(1) He violated a statute, ordinance, or regulation of a public entity;

(2) The violation proximately caused death or injury to person or property;

(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

California Evidence Code § 669.

Thus, Plaintiff took the time to set forth the numerous duties breached in the course of the interaction with defendants.

The California Supreme Court has repeatedly recognized that municipalities may be held liable for negligent hiring and retention of police officers. See *Grudt v. City of Los Angeles*, 2 Cal. 3d 575, 583-85 (1970) (finding trial court erred in striking cause of action against city for negligently continuing to employ police officers after city "knew or should have known that they were dangerous and violent officers, prone to the use of unnecessary force"); see also *Farmers Insurance Group v. County of Santa Clara*, 11 Cal. 4th 992, 1022(1995) (George, J., concurring) ("Of course, if a public entity negligently hires or retains an officer who it knows, or reasonably should know, poses a danger of committing such misconduct, the entity may be held directly liable for the resulting injury.").

Defendants' citation at Memo., p. 13, to *de Villers v. Cnty. of San Diego*, 156 Cal. App. 4th 238, 252 (2007) is indeed puzzling. That does not address the cases where municipalities have been held liable for negligent hiring and retention of rogue police.

Plaintiff plead that Defendants were in a special relationship with respect to Plaintiff, at ¶ 133. Plaintiff was in a special relationship with Defendants as he was in their custody and control. The allegations of custody and control are detailed throughout the complaint. While the standards of ordinary care apply to negligence, an affirmative duty to protect arises where a special relationship exists. *Rodriguez v. Inglewood Unified School Dist.*, 186 Cal. App. 3d 707 (1986). The California Supreme Court illustrates this difference in *Weirum v. RKO*

*General, Inc.*, 15 Cal.3d.40 (1975), finding that "…liability for nonfeasance is largely limited to those circumstances in which some special relationship can be established. If, on the other hand, the act complained of is one of misfeasance, the question of duty is governed by the standards of ordinary care…" Id., at 49. As such, the claim for breach of duties imposed under special relationship alleges different legal theories than those found in the breach of mandatory duties claim.

The common law concept of special relationship covers a party required by law to take, or who voluntarily takes, custody of another under circumstances that deprive the other of his normal opportunities for protection. *Rodriguez*, *supra*, 186 Cal.App.3d at 713. In the traditional "special relationship" setting, "the plaintiff is particularly vulnerable and dependent upon the defendant who, correspondingly, has some control over the plaintiff's welfare." *Kockelman v. Segal*, 61 Cal.App.4th 491, 499 (1998). The existence of a special relationship results in the imposition of an affirmative duty to take reasonable steps to protect a person in such a relationship from foreseeable harm. *Rodriguez*, *supra*, 186 Cal.App.3d at 714-15.

**XV.    Plaintiff properly plead his Tenth claim for Negligence against all Defendants.**

As Plaintiff incorporated the allegations in the negligence claim in the complaint from the preceding paragraphs there, the arguments for the negligent hiring and supervision claims, supra, are incorporated herein.

This is not a case regarding negligent detention. Anything but.  However, the negligence is still obvious by the various breaches of duty associated with the defendants' conduct.

Plaintiff plead with detailed precision the violations of statute, and the attendant breaches of duty which give rise to a negligence claim.  It is Defendants' role to identify why the defendants believe that they are immune, rather than as Defendants' motion suggests at page 14, that Plaintiff demonstrate that the defendants are not immune.

**XV.  Plaintiff properly plead his Eleventh claim for violation of the Bane Act, Civil Code § 52.1.**

There is no requirement of specific intent to violate the Constitution for a Bane Act violation.  The specific intent addresses the *act* that violates the constitution. Defendants misconstrue the holding of *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). [Memo., p. 14.]

In *Reese*, the Ninth Circuit explained, the intent element of a Bane Act claim:

> ". .. [T]he jury must find that the defendants "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id.* But it is not necessary for the defendants to have been "thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.*

*Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018) citing *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993).

Plaintiff has submitted detailed allegations of the entire incident, complete with statements by the Defendants that give reasonable inference to their intent to harm Plaintiff.

**XVI.  Plaintiff properly plead his Twelfth claim for violation of the Ralph Act, Civil Code § 51.7.**

The quotation cited by Defendants at page 15 of the Memo., is not to be found in the text of the First Amended Complaint, suggesting that the Plaintiffs cribbed the current motion from the first motion to dismiss.

Defendants' miscite the complaint. Plaintiff did not "admit" that the stop was based on expired registration. [Memo. 15.] Plaintiff alleges throughout that the license registration lapse was a pretext for a racially motivated stop. [FAC ¶¶ 8, 12, 15, 41, 42, 50]

Throughout the complaint, Plaintiff alleges that the Defendants violated Plaintiff's rights, and harmed him, committing numerous violent acts because he

was a black man. [FAC ¶¶ 6, 8, 9, 10, 11, 40, 167.] These must be taken as true. Plaintiff plead that his race was a substantial motivating reason for their conduct. [FAC ¶167.] That is sufficient to satisfy the requirements of the Ralph Act.

**XVIII.  Plaintiff properly plead his Twelfth claim for violation of Civil Code § 52.3.**

Defendants claim that only the Attorney General can bring suit under Civil Code section 52.3.  However, Defendants are wrong.  Section 52.3(b) states the Attorney General "may" bring a civil suit in the name of the people to obtain appropriate equitable relief.  Civil Code § 52.3(b).

That statutory language does not bar a private victim of police misconduct from bringing the suit. See, e.g., *Cabral v. Cty. of Glenn*, 624 F. Supp. 2d 1184, 1193-94 (E.D. Cal. 2009)(denying summary judgment on a claim under 52.3 brought by a private plaintiff.)

**XIX.  Plaintiff plead sufficient facts to support his 42 U.S.C. § 1983 claims.**

**1.     Plaintiff does not suggestion that liability of any defendant is based upon Respondeat Superior or *mere* Bystander Liability.**

In requesting dismissal Contrary to the suggestion of Defendants at page 16, there is no suggestion in the complaint or in this opposition that any defendant sued under section 1983 on the basis of *respondeat superior*.

Nor is there a suggestion that any officer was merely ""bystander." [Memo. at 16].   The individual defendants were conspirators.  A claim for 1983 conspiracy is recognized in the Ninth Circuit. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856-857 (9th Cir. 1999) (en banc) (affirming jury verdict on § 1983 conspiracy claim)

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### A. Supervisors may be held liable under § 1983

Defendants Ms. Berg and Mr. Nisleit's particular basis for liability for the Constitutional violations supporting liability under section 1983 is further discussed in detail at Section IV and V, *supra*, and is incorporated by reference herein. Berg and Nisleit are sued in their individual capacity.[FAC ¶ 57.]

The Ninth Circuit has instructed that supervisors may be held liable under § 1983 as follows:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*Moss v. U.S. Secret Serv.*, 711 F.3d 941, 967 (9th Cir. 2013), *rev'd sub nom. on other grounds*, *Wood v. Moss*, 572 U.S. 744, 134 S. Ct. 2056, 188 L. Ed. 2d 1039 (2014) (internal citation omitted); see also *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (same).

### B. Even non-supervisory officers have a duty to intercede.

Defendants had a duty to intercede to prevent the violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, and Plaintiff alleged that they failed to do so. [FAC ¶¶ 26, 40.]   The doctrine of "failure to intercede" imposes on officers "a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *U.S. v. Koon*, 34 F.3d 1416, 1447 (1994), *rev'd on other grounds*, 518 U.S. 81 (1996). However, officers can only be held liable for failing to intercede if they were present and had a "realistic opportunity" to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000), as amended (Oct. 31, 2000). This theory also requires that the officer has contemporaneous knowledge that a constitutional violation was taking place. See

*Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002), aff'd sub nom. *Groh v. Ramirez*, 540 U.S. 551 (2004) (affirming dismissal of failure to intercede claim regarding unlawful search where line officer "was not aware that the warrant was defective until long after search was completed").  The facts contemporaneously apparent to the defendant officers gave obvious notice that Plaintiff's rights to be free from unreasonable search and seizure [FAC ¶ 32, 42] false arrest [FAC ¶ 44,]  fabrication of evidence [FAC ¶¶ 33-35, 43, 44, 48, 49 ] and retaliation for freedom of speech were being violated [FAC ¶¶ 32, 34, 43] and they each had the ability to intercede.  Instead, Defendants all joined in.

Defendants made admissions about "attitude" as the basis for their treatment of Black [FAC ¶ 39,] only claiming that Black was yelling at officers [FAC ¶ 43,] that Black had not committed any crime [FAC ¶31,] that Black had not resisted [FAC ¶ 36,] and not having seen a crime committed [FAC ¶¶ 44, 45, 46.] Defendants conducted an unreasonable use of force, seizure and arrest, and search, despite the lack of probable cause, without reward of finding contraband [FAC ¶¶ 41-42.] And repeatedly used force despite Plaintiff not resisting. [FAC ¶¶ 26, 28, 31, 36.]

## 2.  Plaintiff's Fourteenth Claim for False Arrest is valid.

Poole and Ortiz initially seized Plaintiff while he was lawfully operating his vehicle with a temporary permit [FAC ¶ 7.] Without any justification Killinger forced Plaintiff from his vehicle. [FAC ¶¶ 26-28.] Then a group of officers seized Plaintiff harder and took him to the ground. [FAC ¶ 31.]   Then the herd of defendant officers conspired together to charge Plaintiff with a crime he did not commit. [FAC ¶ 44.] Poole signed the false charges. [FAC ¶¶ 44-50.] Several wrote false reports which supported the false charges. [FAC ¶¶ 51-53 .] The prosecutor did not proceed. [FAC ¶ 65.]

"To prevail on [a] § 1983 claim for false arrest and imprisonment, [plaintiff must] demonstrate that there was no probable cause to arrest him." *Cabrera v. City*

*of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004)) (internal quotation omitted).

Plaintiff did not engage in criminal activity. [FAC ¶¶ 7-11,18-29.] Other than the legally precluded racial reason of being a black man driving a nice car at night, there was no basis, fair probability or substantial chance, to believe Plaintiff had engaged in criminal activity. [FAC ¶¶ 45, 46, 47, 48, 49, 50, 51.]   Plaintiff plead that the arrest occurred without a warrant and without probable cause. [FAC ¶ 172.]  The charges brought by the defendants were dismissed. [FAC ¶ 65.]

Contemptibly, Defendants seek to have their trainee colleague, Ryan Poole, designated by Defendant Berg despite Poole not witnessing the alleged offense, to falsely charge Plaintiff and bear the brunt of Plaintiff's false arrest claim.  But as reflected in the complaint, and by virtue of their conspiracy, Defendants San Diego Police Chief David Nisleit, Elizabeth Ortiz, Amy Buell, Katherine Jennings, Alyssa Tutterow, Christina Berg, Jardin Killinger, Austin Fowler, Kyle Valente, Jonathan Wells, Diego Usma, Jose Rodriguez, David Burns, each played their own part.

### 3.  Plaintiff's Fifteenth Claim for Excessive Force is valid.

Defendants claim, without citation to authority, that the claim for excessive force should be subsumed within the state law claims for false imprisonment and and unlawful arrest.  It is not clear why they believe so.  Plaintiff has multiple remedies.  What Defendants suggest is that if a plaintiff was properly arrested, but beaten unreasonably during the course of the arrest, that there would not be a claim for excessive force. Clearly that is not so.

Defendant's cited case of  *Godoy v. Brock*, No. 3:13-cv-0194-GPC-BGS, 2014 U.S. Dist. LEXIS 131882, at *1 (S.D. Cal. Sep. 18, 2014) was resolved on summary judgment, not on motion to dismiss.  The Ninth Circuit has not accepted

the Tenth Circuit's reasoning on the case cited by Defendants, Memo. at 17, for excessive force either:

> To determine whether officers used excessive force to carry out an unlawful frisk, we do not, as the Tenth Circuit has suggested, ask whether the officers used greater force than would have been reasonably necessary to effect a lawful frisk. See *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc). As we explained in *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024-26 (9th Cir. 2015), that approach would be contrary to *Graham*.

*Thomas v. Dillard*, 818 F.3d 864, 889-90 (9th Cir. 2016).

Poole and Berg are liable for excessive force. [FAC ¶¶ 183-189] Plaintiff complained that the handcuffs were too tight, and Poole in Berg's presence stated that the handcuffs were not supposed to be comfortable. [FAC ¶ 36.] Thus, Berg knew that her subordinates were using the handcuffs to harm rather than merely control. Despite Poole admitting that Plaintiff had not resisted, Berg watched Poole tighten the handcuffs and heard Plaintiff's complaint. [FAC ¶ 36, 37.] Inspecting them, Berg then falsely claimed that the handcuffs were "stuck" and would have to be cut off. As later determined at the jail, the handcuffs were not stuck [FAC ¶ 54.] A reasonable inference is that Ms. Berg was taking her bit of "justice" against Plaintiff for getting "lippy", FAC ¶ 30, and having the audacity to request a supervisor. [FAC ¶ 34.] Intentionally tightening handcuffs to the point of causing pain is not reasonably necessary.

Defendant Ortiz and Usma were integrals participant in the events, and Plaintiff plead that all defendants acted as part of a conspiracy. "Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Monteilh v. County of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citations and footnote omitted). For example, providing armed backup during an unconstitutional search constitutes integral

participation in the search. *See Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009); see also *Green v. City and County of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014) (jury could find that officer who restrained plaintiff while another officer pointed a gun at her was an integral participant in alleged excessive force; affirming denial of partial summary judgment).

**4. Plaintiff's Sixteenth Claim for Unreasonable Search is valid.**

Plaintiff alleged that Defendants Poole, Ortiz, Buell, Tutterow, Berg, Killinger, Fowler and Burns were part of the conspiracy to deny Plaintiff his rights. [FAC ¶ 9, 10, 23, 25, 30, 31, 33, 40-47, 51, 191) There is no denial that they were all present during the search. Buell, Tutterow, Killinger, Fowler and Burns had all put their hands on Plaintiff. [FAC ¶ 31.] Plaintiff plead that the defendants realized that their seizure and use of force was unlawful, and that they sought a pretext for mistreating Plaintiff. [FAC ¶ 42.] Plaintiff plead that the search was in furtherance of the conspiracy between the defendants. [Id.]

**5. Plaintiff's Seventeenth Claim for Fabrication of Evidence is valid.**

By their motion to dismiss, the Defendants seem to argue that because the prosecutor refused to proceed with the charges against Plaintiff, there was no harm in making false statements. [Memo., 17.] Defendants' motion falsely quotes the complaint as stating "no criminal charges were filed against Plaintiff." [Memo., 17]. The cited paragraph 59 states that the "charges brought against [Plaintiff] were declined for prosecution." [FAC ¶ 59.] The criminal case was dismissed. [FAC ¶ 65.]

As with the other claims, Plaintiff alleged that the fabrication of the evidence was part of the conspiracy. [FAC ¶ 198.] With respect to Berg, Usma, Rodriguez and Burns, such defendants were also alleged as part of the conspiracy. Rodriguez and Burns both threw Plaintiff to the ground. [FAC ¶ 31.] Usma and Rodriguez desperately searched for evidence through an unlawful search to justify the unlawful racially motivated use of force. [FAC ¶ 42.] As discussed above,

Berg was the moving force behind the false narrative, which lead to the false reports and false charges. [FAC ¶ 34, 35, 44, 45.]

Plaintiff suffered harm arising from the fabrication of evidence. [FAC ¶ 203.] Plaintiff plead that the supervisor at the police station required repeated revisions of the booking report before approving it. [FAC ¶ 49.] Plaintiff remained in the police vehicle while this took place. [FAC ¶ 48.] However, the booking report and supporting reports were used to charge Plaintiff were falsified. [FAC ¶ 50, 51] But for the falsified reports, there would no basis to transport Plaintiff anywhere.

At the jail, the jailor indicated that Plaintiff would be booked and released, however based on the report and a phone call by Defendant Ortiz, Plaintiff was held. [FAC ¶ 53.] Without the falsified reports Plaintiff would have been released. Plaintiff plead that the falsified evidence resulted in "loss of liberty." [FAC ¶

**6. Plaintiff's Eighteenth Claim for Retaliation for Exercise of First Amendment is valid.**

Ortiz and Poole followed Plaintiff for seven blocks, and ultimately stopped Plaintiff. They claimed that his registration was exired. [FAC ¶¶ 7-11] Plaintiff provided his name, driver's license number, and his date of birth. The document which acted as temporary registration was conspicuously taped to the windshield of his vehicle. Plaintiff demanded that Poole and Ortiz call a supervisor as there was no reason to stop him other than him being a black man driving a nice car. He told them to stay away from his car. [FAC ¶ 12.]

Beyond the requested registration information, identification and insurance information, Plaintiff refused to speak to Poole and Ortiz further. Plaintiff exercised his First Amendment right He complained over the pretext stop, that Poole and Ortiz decided to stop Plaintiff because of his race, and requested a supervisor. [FAC ¶¶ 14-15]

Poole and/or Ortiz requested additional police, who arrived. [FAC ¶ 17]

Defendant Tutterow falsely stated to the other defendants that Plaintiff "was uncooperative and *yelling*." [Id.] In fact, Plaintiff was cooperative and had followed all instructions. [Id.]

Plaintiff began making a video with his phone. Killinger approached and attempted to speak to with Plaintiff. Plaintiff declined to speak to Killinger. Killinger put his hands on Plaintiff's vehicle. Plaintiff objected to Killinger touching his vehicle. Killinger taunted Plaintiff by repeatedly touching his vehicle, and spoke to him in a verbally aggressive manner as to challenge Plaintiff to fight.[FAC ¶¶ 18-23.]

Plaintiff had a right to make a video recording of the officers which was protected under the First Amendment. See *Adkins v. Limtiaco*, 537 F. App'x 721, 722 (9th Cir. 2013); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011). Plaintiff had a First Amendment right to verbally protest to the police. *See Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019-1020 (9th Cir. 2015). Plaintiff alleged this in the complaint. [FAC ¶ 25, 27.]

Killinger directed that Plaintiff exit his vehicle. Plaintiff agreed to do so. When Plaintiff turned to unbuckle his seatbelt, Killinger interrupted that effort by reaching in the window and took Plaintiff's phone. Then Killinger and Fowler opened the door and tried to pull Plaintiff out despite his seatbelt being still holding him. Plaintiff did not resist when Killinger unbuckled the seat belt. Then Plaintiff was violently removed from the car, by a total of four officers, which harmed him. [FAC ¶ 28.]

In the booking report, Poole describes Plaintiff "yelling" and "forcefully pointing his finger" at Killinger and attributed it as "assaultive behavior." [FAC ¶ 50.] Tutterow falsely claimed in her report that Plaintiff said "fuck you." [FAC ¶ 51(b).] Protected Speech was considered sufficiently important by Poole and Tutterow to place in their reports.

Further, there is evidence that of an official policy to that effect with respect to Ms. Berg's suggestion that Plaintiff got "lippy." [FAC ¶ 30.] Ms. Berg, herself, referred to Plaintiff's request for a supervisor in coarse terms. [FAC ¶ 34.] Why would whether a person got "lippy" be relevant to anything? People are constitutionally protected in being "lippy." There is further evidence in Fowler's admission, in Berg's presence without any remonstration by Berg or the other officers, that it was about Plaintiff's "attitude." [FAC ¶ 39.]

There are three elements to a First Amendment retaliation claim. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006). "[A] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Id.* at 770 (citing *Mendocino Envt'l Cntr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). To satisfy the causation requirement, a plaintiff must plead and ultimately prove that a defendant's desire to cause the chilling effect was a but-for cause of defendant's action. *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008).

Plaintiff has plead all three elements. Plaintiff was engaged in constitutionally protected activity. [*Supra.*] Plaintiff has plead that the violent conduct of Killinger, Fowler, Burns, Buell, Valente, Wells and Rodriguez certainly would chill a person of ordinary firmness from continuing to engage in protected activity. [FAC ¶ 29, 40, 209.]

Plaintiff has pled that the defendants desire to cause the chilling effect was a but-for cause of the defendants' actions. [FAC ¶ 29, 207, 208.] Plaintiff has plead the elements as required for this claim, as to all defendants.

## XX. Plaintiff adequately plead facts to support his Monell claims.

If the court finds that the Plaintiff has sufficiently pled any 1983 claim against the Defendants, the *Monell* claim must not be dismissed.

The *Monell* claim is sufficiently pled.

A *Monell* claim under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers conduct conformed to official policy, custom, or practice. *Lee v. City of Los Angeles*, 250 F.3d 668, 682–83 (9th Cir. 2001)

Where the plaintiff's allegations against the municipality allege nothing more than the municipality maintained policies that amounted to deliberate indifference to the Plaintiff's constitutional rights and that the policies were the moving force behind the constitutional violation, those allegations are sufficient to withstand a motion to dismiss. *Id.* at 682–83.

After *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) were decided, the Ninth Circuit in *Starr v. Baca*, 652 F.3d 1202, 1213-16 (9th Cir. 2011), took issue with the apparent heightened pleading standard set forth in those and other cases, and affirmed the notice pleading standard for this circuit. The *Starr* court said that FRCP Rule 8(a) has not been changed, and a plaintiff sufficiently pleads a claim by pleading a short and plain statement that the pleader is entitled to relief. *Id.*, at 1212.

The Ninth Circuit noted that the Supreme Court applied what appeared to be a higher pleading standard, without any legal basis for doing so. *Id.* at 1213. The court reaffirmed that in order to survive a motion to dismiss the pleading must first contain sufficient allegations of underlying facts to give fair notice to enable the opposing party to defend itself effectively; and second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief. *Id.* at 1216.

In *Duenez v. City of Manteca*, 2012 WL 4359229 (E.D. Cal 2012), the court indicated that the Plaintiff had set forth factual allegations within the complaint to support *Monell* claims. In that case, a spokesman from the department indicated that a shooting was justified in spite of a video which appeared to show evidence that the shooting conduct was in dispute. In effect, the statement given was

ratification of the shooting conduct on behalf of the City by its representative which was sufficient. *Duenez*, at pg. 9.

The court in *Duenez*, analyzed the two-step process for evaluating the sufficient of a claim set forth in *Iqbal* and *Twombly*, as the following: "the court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, plausibly give rise to an entitlement to relief." *Duenez*, at *5 (Internal quotation marks and citations omitted).

The court said "plausibility," does not refer to the likelihood that a pleader will succeed in proving the allegations, but instead refers to whether the allegations, if true, show the allegations do not lack enough facts to state a cognizable legal theory. *Id*.

### 1. Monell Policy or Custom (Nineteenth Claim)

Plaintiff set forth the unconstitutional policies in summary form, drawn from the more detailed allegations in the body of the complaint. [FAC ¶¶ 217-221.] The policies are set forth specifically. [FAC ¶¶ 135, 143, 144.] It can't be ignored that a supervisor officer was involved in most of the interaction with Plaintiff, reflecting official policy or custom. Acts against third-parties according to those unconstitutional policies have resulted in other successful lawsuits under section 1983. [FAC ¶ 137.]   The causation discussion with respect to Plaintiff is included within those same paragraphs.

### 2. Monell Failure to Train (Twentieth Claim)

Plaintiff set forth the failure to train resulting in Monell liability in summary form, drawn from the more detailed allegations in the body of the complaint. [FAC ¶¶ 222-226.]  The specific lack of training and the harmful consequences resulting to Plaintiff are further specified within the body of the complaint. [FAC ¶¶ 134, 135, 136, 137.] Additional causation discussion is included within those same paragraphs.

### 3. Monell Supervisory Liability (Twenty-First Claim)

Plaintiff incorporates by reference the preceding discussion with respect to the liability of Defendant Berg and Nisleit.

The allegations for the supervisory liability claim are well-pleaded. [FAC ¶¶227-232] Plaintiff alleged that the City had notice of the incident by virtue of receiving the claim, yet did nothing. [FAC ¶ 67.] Plaintiff alleged that during the incident itself the Defendants were contacting supervisors who were approving the conduct against Plaintiff. [FAC ¶ 45.] All of this supports ratification.

### XXI. Plaintiff adequately plead facts to support his Twenty Second and Twenty Third Claims under 42 U.S.C. § 1985.

Plaintiff has alleged a conspiracy among the defendants in painstaking detail throughout the complaint.

With respect to the Twenty-Second Claim under 42 § 1985(2), the statute addresses intimidation of a party, and conspiring "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;. . ." 42 U.S.C. § 1985(2).   Plaintiff alleged as much.  [FAC ¶¶ 234, 235, 236, 237.]

Plaintiff has plead that he is black. [FAC ¶ 4.]   Plaintiff also plead that he was the subject of racial profiling based on being black. [FAC ¶ ¶ 9, 10, 11.]

Throughout the operative complaint, Plaintiff has plead that the actions taken against him were made on a race-based animus.  Those are summarized in the claim, based on the allegations incorporated by reference. [FAC ¶ 237.]

There is nothing conclusory about the complaint.  With respect to the interference with the due administration of justice, Plaintiff has exhaustively discussed the facts supporting the § 1983 claim for falsification of evidence, i.e., §

XIX(5).  That conduct alone satisifies the plain language of the interference with the due course of justice contemplated in § 1985(2).

In order to state a claim under Section 1985(3), Plaintiff must prove that he is a member of a protected class, and that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971); *Watkins v. U.S. Army*, 875 F.2d 699, 722 (9th Cir. 1989).

Plaintiff has made such allegations, which must be taken as true at this juncture.

## XXII.  Plaintiff adequately plead facts to support his Twenty-Fourth Claim under 42 U.S.C. § 1986.

Section 1986 provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act[.]" 42 U.S.C. § 1986.

Plaintiff has alleged that Nieslet and the City of San Diego were aware of the racial profiling, yet did nothing.

## XXIII.        Conclusion

For the foregoing reasons, the Defendants' motion to dismiss should be denied.  To the extent that the Court finds any claim insufficient, Plaintiff requests leave to amend.

Dated: June 15, 2022                              Respectfully submitted,

The McMillan Law Firm, APC


/s/ Scott A. McMillan

Attorney for Lance Black
Plaintiff

# CERTIFICATE OF SERVICE
## NOTICE OF ELECTRONIC FILING

Lance Black v. City of San Diego, et al;
*USDC Case No. 21-cv-1990-LL-JLB*
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF
CALIFORNIA,

I am employed in the County of San Diego, State of California. I am over 18 years of age and am not a party to the within action. My business address is 4670 Nebo Dr, Suite 200, La Mesa, CA 91941.

On June 15, 2022, I electronically filed the foregoing documents described as:

• **PLAINTIFF LANCE BLACK'S OPPOSITION TO DEFENDANTS CITY OF SAN DIEGO, CHIEF DAVID NISLEIT, RYAN POOLE, ELIZABETH ORTIZ, ALYSSA TUTTEROW, CHRISTINA BERG, AMY BUELL, KATHERINE JENNINGS, JARDIN KILLINDER, AUSTIN FOWLER, KYLE VALENTE, JONATHAN WELLS, DIEGO USMA, JOSE RODRIGUES, AND DAVID BURN'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[X]     (BY CM/ECF) I cause to be transmitted a copy of the foregoing document(s) this date via
the United States District Court's ECF System, which electronically notifies all counsel as follows:

| | |
|---|---|
| MARA W. ELLIOTT<br>GEORGE F. SCHAEFER<br>JACQUELINE J. MCQUARRIE<br>Office of the City Attorney<br>1200 Third Avenue, Suite 1100<br>San Diego, California 92101-4100<br>Telephone: (619) 533-5800<br>jmcquarrie@sandiego.gov | *Attorneys for Defendants City of San Diego,<br>San Diego Police Department, Chief David<br>Nisleit, Ryan Poole, Elizabeth Ortiz, Alyssa<br>Tutterow, Christina Berg, Filiberto Tapia,<br>Jardin Killinger, Austin Fowler, Kyle<br>Valente, Jonathan Wells, Don Tommy<br>Miranda, Diego Usma, Jose Rodriguez,<br>David Burns, and Joshua Cummings* |

Executed on June 15, 2022, at San Diego, California.

/s/ Scott A. McMillan

Scott A. McMillan