1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| LANCE BLACK, an individual,<br><br>                              Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>                              Defendants. | Case No.:  3:21-cv-1990-RBM-JLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[Doc. 46]** |

11
12
13
14
15
16
17
18

    On April 11, 2022, Defendants City of San Diego ("City"), San Diego Police Chief David Nisleit ("Chief Nisleit"), Ryan Poole, Elizabeth Ortiz, Alyssa Tutterow, Christina Berg, Amy Buell, Katherine Jennings, Jardin Killinger, Austin Fowler, Kyle Valente, Jonathan Wells, Diego Usma, Jose Rodriguez, and David Burns (collectively "City Defendants" or "Defendants") filed a motion to dismiss Plaintiff's first amended complaint ("FAC") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) ("Motion").  (Doc. 46.)  The City Defendants filed a Request for Judicial Notice accompanying their motion to dismiss, which the Court will address herein.  (Doc 46-2.)  Plaintiff Lance Black ("Plaintiff") filed a response in opposition on June 15, 2022.  (Doc. 53.)  The City Defendants filed a reply in support of the Motion on June 29, 2022.  (Doc. 56.)

19
20
21
22
23
24
25
26
27
28

For the reasons outlined below, the City Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

Plaintiff originally filed a complaint on November 27, 2021.  (Doc. 1.)  Pursuant to Plaintiff and Defendants' stipulation, Plaintiff filed the FAC on March 10, 2022.  (Docs. 37-39.)  The FAC is a wide-ranging seventy-seven page complaint that alleges twenty-four causes of action against fifteen defendants.

The FAC names as Defendants thirteen officers from the City of San Diego Police Department, Chief Nisleit, and the City.  (Doc. 39.)  The FAC asserts the following claims: (1) assault; (2) battery; (3) false imprisonment; (4) intentional infliction of emotional distress; (5) trespass to chattels; (6) false light; (7) invasion of privacy; (8) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (9) negligent hiring, training, and supervision[1]; (10) negligence[2]; (11) violation of the Tom Bane Civil Rights Act, Cal. Civil Code § 52.1(a); (12) violation of the Ralph Civil Rights Act, Cal. Civil Code § 51.7; (13) violation of Cal. Civil Code § 52.3; (14) 42 U.S.C. § 1983 ("Section 1983") claim alleging Fourth Amendment violations for false arrest; (15) Section 1983 claim alleging Fourth Amendment violations for excessive force; (16) Section 1983 claim alleging Fourth Amendment violations based upon an unreasonable search; (17) Section 1983 claim alleging Fourteenth Amendment violations based upon deliberate fabrication of evidence; (18) Section 1983 claim alleging First Amendment violation for retaliation for exercise of First Amendment rights[3]; (19) Section 1983 claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) ("*Monell*") based upon official policies and customs; (20) Section 1983 *Monell* claim for failure to train; (21) Section 1983 *Monell* claim for

---

[1] This claim asserts counts for negligence per se and negligence.  (FAC at 38-55.)

[2] This claim asserts counts for negligence per se and negligence.  (FAC at 56-57.)

[3] Count 1 is directed against all Defendants except Doe 19 "Nigra" and Count 2 is directed against Doe 19 "Nigra."  (FAC at 66-68.)

supervisor liability; (22) violation of 42 U.S.C. § 1985(2); (23) violation of 42 U.S.C. § 1985(3); and (24) violation of 42 U.S.C. § 1986.  (*See generally* FAC.)

The FAC alleges "Plaintiff is a pastor and black man who is readily identifiable as a black man."  (FAC at ¶ 5.)  On September 2, 2020, Plaintiff purchased a 2017 Silver Edition Infinity QX80.  (*Id.* at ¶ 7.)  As of November 3, 2020, Plaintiff had not received registration tags or registration for his vehicle from the Department of Motor Vehicles.  (*Id.*)  On November 3, 2020, he drove his vehicle on El Cajon Boulevard with a "Used Vehicle Purchase/Temporary Identification" DMV Form Reg. 51 affixed and displayed under the front windshield of the vehicle.  (*Id.*)  Upon entering onto El Cajon Boulevard from a highway exit, Plaintiff first noticed a San Diego Police vehicle driving in front of him, with Defendant Poole driving and Defendant Ortiz as a passenger.  (*Id.* at ¶ 8.)  Plaintiff drove with the window down and music on, while he rested his left hand wearing a nice watch outside the window.  (*Id.* at ¶ 8.)

Eventually, Defendant Poole and Ortiz drove the police car to the left side of Plaintiff's vehicle.  (*Id.*)  Plaintiff alleges the officers noted his ethnicity at this time and eventually initiated a traffic stop of his vehicle.  (*Id.* at ¶¶ 8-9.)  After the officers turned on their red lights, Plaintiff drove to the side of the street and turned off the vehicle in compliance with Poole and Ortiz's instructions.  (*Id.* at ¶ 9.)  Plaintiff "immediately began recording the interaction on his cell phone."  (*Id.*)  Plaintiff alleges he was seized without probable cause, the stop was without a warrant, and the deprivation of his constitutional rights was motivated because "Plaintiff is black, was driving an expensive car, and was conspicuously wearing jewelry."  (*Id.* at ¶¶ 9-10.)

When Plaintiff inquired as to the basis of the stop, Poole responded that Plaintiff's vehicle registration was expired.  (*Id.* at ¶ 12.)  Plaintiff demanded that a supervisor be called immediately and told Poole and Ortiz to stay away from his vehicle.  (*Id.*)  Plaintiff verbally complained about the pretextual stop.  (*Id.* at ¶¶ 14-15.)  He contends the officers retaliated against him for exercising his rights.  (*Id.* at ¶ 15.)  When Poole and Ortiz called for reinforcement, fourteen officers appeared.  (*Id.* at ¶ 16.)  At this time, a crowd of

witnesses gathered to observe the encounter.  (*Id.* at ¶ 17.)

As officers surrounded Plaintiff's vehicle, Plaintiff filmed the encounter on his cell phone.  (*Id.* at ¶ 18.)  Ortiz called upon Defendant Killinger to observe Plaintiff as Ortiz went to the police car.  (*Id.*)  Killinger began touching Plaintiff's vehicle and "attempted to engage [Plaintiff] in dialogue" while Plaintiff continued to film the incident.  (*Id.* at ¶ 19.)  Plaintiff told Killinger he did not want to talk to him and that he wanted to speak to a supervisor.  (*Id.*)  Killinger continued to touch Plaintiff's vehicle and spoke to Plaintiff in a verbally aggressive manner, taunting and attempting to provoke Plaintiff.  (*Id.* at ¶¶ 19-26.)  Eventually Killinger "reached in the window and came in offensive," initiated nonconsensual contact with Plaintiff, and confiscated Plaintiff's phone.  (*Id.* at ¶ 23.)  Defendants deleted the video from Plaintiff's phone.  (*Id.* at ¶ 24.)

Killinger then told Plaintiff he was being detained and instructed him to exit the vehicle.  (*Id.* at ¶ 26.)  Plaintiff began to exit the vehicle, but turned away to unbuckle his seatbelt.  (*Id.* at ¶ 28.)  This led to Killinger grabbing Plaintiff, taking his cell phone, and another officer violently removing Plaintiff from the vehicle and shoving Plaintiff against the vehicle.  (*Id.*)  "Once against the vehicle, with his hands on the roof, and his arms held in front, [Plaintiff] repeatedly asked what crime he had committed."  (*Id.* at ¶ 30.)  Defendants Fowler, Burns, Buell, Valente, Wells, and Rodriguez then forcibly threw Plaintiff to the ground.  (*Id.*)  Defendant Rodriguez searched Plaintiff while he was on the ground.  (*Id.* at ¶ 31.)  Defendants pulled up Plaintiff's shirt, exposing his midriff and underwear to onlookers.  (*Id.*)  Defendants Tutterow and Jennings "pressed down upon" Plaintiff, Defendant Buell placed her knee on Plaintiff's leg, one Defendant twisted Plaintiff's leg, and Defendant Wells placed Plaintiff in tight handcuffs.  (*Id.*)  Defendants Burns and Wells raised Plaintiff up by the shoulders and brought him to Poole's vehicle.  (*Id.* at ¶ 31.)  An unidentified Defendant accessed Plaintiff's phone, deleted the video, and then placed it back in the vehicle.  (*Id.* at ¶ 30.)

A supervisor, Defendant Christina Berg, arrived on the scene and questioned various officers about the stop and ensuing actions.  (*Id.* at ¶¶ 32-39.)  Plaintiff was eventually

placed inside a police car and detained in the vehicle for at least three hours.  (*Id.* at ¶ 41.)

Without Plaintiff's consent, Defendants Usma, Rodriguez, Wells, Jennings, and Valente searched Plaintiff's vehicle, including the glove box, center console, trunk, and tire compartment.  (*Id.* at ¶ 42.)  Defendant Jennings illuminated the interior of the vehicle while Defendant Usma conducted at search.  (*Id.*)

Berg called Poole, Killinger, Ortiz, Fowler, Wells, and Valente for a meeting.  (*Id.* at ¶ 44.)  "Ortiz instructed Poole to turn off his body camera" and Defendants turned off their audio recordings.  (*Id.*)  Plaintiff alleges "Defendants collaborated to concoct a materially false 'official' story . . . to justify the wrongful conduct committed against Plaintiff" and conceal any wrongdoing.  (*Id.*)  He was accused of assaulting a peace officer and interference with the duties of a police officer.  (*Id.*)  Berg designated Poole to the be arresting officer, "despite his lack of personal knowledge of the facts constituting the elements of a crime."  (*Id.*)  Despite another Defendant locating the temporary title documents for Plaintiff's vehicle registration, Berg ordered Plaintiff to be taken into custody.  (*Id.* at ¶ 45.)  Plaintiff contends Defendants Tutterow, Wells, Fowler, Killinger, Valente, and Poole made false statements in their police reports.  (*Id.* at ¶ 51.)  Poole prepared a booking report, which is allegedly "substantively false."  (*Id.* at ¶ 50.)  Based upon the information within the booking report, Plaintiff was booked in San Diego County Jail.  (*Id.*)  He was released on November 4, 2020 and he learned that the charges were dropped when he appeared at his arraignment.  (*Id.* at ¶ 55.)

Plaintiff alleges he suffered financial harm, physical trauma (including recurrent pain from an injured shoulder), pain and suffering, humiliation, harm to reputation, and severe emotional distress.  (*Id.* at ¶ 59.)

## II.   REQUEST FOR JUDICIAL NOTICE

The Court first addresses the City Defendants' request for judicial notice which accompanied its motion to dismiss.  (Doc. 46-2.)  The City Defendants request judicial notice of court filings in the following cases:

- Order Granting Joint Motion to Dismiss Certain Parties and Claims filed in Case No. 17-cv-600-H-WVG, *Melvin Brown, II v. City of San Diego, et al.* (S.D. Cal. Sept. 5, 2018); and

- Complaint for Damages and Request for Jury Trial filed in Case No. 18-cv-1150-BEN-AGS (S.D. Cal. June 3, 2018).

As a general rule, the court is limited to reviewing only the complaint when ruling on a 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2011) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)); *see also U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). If a court considers documents extraneous to the pleadings on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). As to the incorporation-by-reference doctrine, when documents are not physically attached to the complaint, they may be considered if: "(1) the complaint refers to the document; and (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 998; *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[E]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (citations omitted). "[U]nlike judicial notice, a court may assume [an incorporated document's] contents are true for purposes of a motion to dismiss" but "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (internal quotation marks and citation omitted).

Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2)

can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).  A court may take judicial notice of court filings, other matters of public record, and documents that are readily verifiable, including public records and government documents available from reliable sources on the internet, such as websites run by governmental agencies.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see U.S. ex rel. Modglin v. DJO Glob. Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("the court can take judicial notice of [p]ublic records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies") (internal quotations omitted).

Here, the FAC references the cases in which the City Defendants request the Court to take judicial notice.  (FAC at ¶ 137(a)-(e).)  Plaintiff cites these cases to support its negligent hiring, training, and supervision claim and *Monell* claims, claiming these lawsuits "reflect an official policy or custom of the City of San Diego and its Police Officers to continue, despite adverse consequences and notice, to engage in unconstitutional searches and seizures, use of excessive force, false arrests, fabrication of evidence, in violation of the United States Constitution." (*Id.* at ¶ 137(f).)  The Court finds that filings from the cases cited in the FAC are a proper subject of judicial notice.

## III.   <u>MOTION TO DISMISS</u>

### A.   <u>Legal Standard</u>

Under Rule 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

7

construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

B. <u>Analysis</u>

i. *Claims against Chief Nisleit*

Defendants seek wholesale dismissal of all claims against Chief Nisleit. (Doc. 46-1 at 13.) The FAC alleges causes of action against Chief Nisleit in his individual capacity and his official capacity. (FAC at ¶ 57.) The claims asserted against Nisleit include the ninth through sixteenth causes of action, eighteenth through twenty-first causes of action, and the twenty-fourth cause of action. (*See generally* FAC.) The causes of action include tort-based claims (negligent hiring, training, and supervision and negligence), violations of the Bane Act and Ralph Civil Rights Act, violations of the First and Fourth Amendments under Section 1983, *Monell* claims, among other claims. (*Id.*) Defendants generally contend there are no factual allegations to support a claim against Chief Nisleit in his individual capacity, and the official capacity claims against Nisleit should be dismissed as redundant of Plaintiff's claims against the City. (*Id.*) In response, Plaintiff contends that

individual capacity claims may proceed against Nisleit and recites various allegations which support his claim for negligent hiring, training, and supervision. (Doc. 53 at 16-18.) Plaintiff points to the FAC's citations to other cases involving unlawful conduct and excessive force which would have put Nisleit and the City on notice of the inadequacy of their training programs and supervision protocols. (*Id.* at 19-20 (citing FAC at ¶ 137).)

A suit brought against a defendant in his official capacity is effectively a suit against the government unit that employs the defendant, i.e., the City. *Monell*, 436 U.S. at 690 n.55. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55; *see also Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* [], local government units can be sued directly for damages and injunctive or declaratory relief."). Plaintiff's official capacity *Monell* claims against Chief Nisleit (i.e., claims nineteen through twenty-one) are subject to dismissal because they are redundant to the claims brought against the City. As such, Defendants' motion is granted as to dismissal of the official capacity *Monell* claims against Chief Nisleit (i.e., claims nineteen through twenty-one).

Defendants' briefing lacks caselaw and authority to support its position that all other claims against Officer Nisleit should be dismissed. *See Officia Imaging, Inc. v. Langridge*, No. SA CV 17-2228-DOC-DFMx, 2018 WL 6137183, at *13 (C.D. Cal. Aug. 7, 2018) (denying portion of motion to dismiss which contained undeveloped argument); *Strother v. Baldwin*, No. 16-cv-00255-TLN, CKD, 2017 WL 6017137, at *7 (E.D. Cal. Dec. 5, 2017) (declining to consider portion of argument raised in motion to dismiss, reasoning "the Court is not required to address perfunctory and undeveloped arguments."). Accordingly, Defendants' motion is denied to the extent it seeks dismissal of all other claims against Chief Nisleit.

### ii. Claims against Sergeant Berg

Defendants seek wholesale dismissal of all claims against Sergeant Berg on the basis that any alleged unlawful conduct at or near the time of the stop occurred prior to Berg's

arrival on the scene.  (Doc. 46-1 at 14.)  The claims asserted against Berg include the second through eighteenth causes of action and the twenty-third cause of action.  (*See generally* FAC.)  The only causes of action ***not*** asserted against Berg are those for assault, *Monell* liability, and violation of 42 U.S.C. § 1986.  (*Id.*)

Plaintiff responds by citing to numerous allegations against Sergeant Berg in the FAC which support her personal involvement in the alleged torts and constitutional deprivations.  (Doc. 53 at 20-23.)  This includes being at the scene with the "ability to investigate and mitigate [Plaintiff's] injuries, stop the battery, and false imprisonment, and to prevent the search of [Plaintiff] and his vehicle."  (*Id.* at 21 (citing FAC at ¶ 33).)  It alleges Berg's "actions were in furtherance of the conspiracy to deprive Plaintiff of his constitutional rights" which were substantially motivated by Plaintiff's race.  (*Id.*)  To justify the use of force against Plaintiff and "concoct false charges against Plaintiff," Berg suggested that Plaintiff was being aggressive and fighting.  (*Id.* (citing FAC ¶ 35).)

Similar to the analysis with Chief Nisleit, the wholesale dismissal of all claims against Sergeant Berg is premature at this stage.  *See supra* p. 9 (citing cases).  Accordingly, Defendants' motion is denied to the extent it seeks dismissal of all claims against Sergeant Berg.

### iii.   All Causes of Action

#### 1.   Assault (Cause of Action 1)

Defendants argue that Plaintiff has failed to allege facts to support any theory of assault against all named Defendants.  (Doc. 46-1 at 14-15.)  Plaintiff responds that he has alleged facts to support a conspiracy throughout the FAC, including a conspiracy "to harm Plaintiff by causing injury to his person and property and deprive him of his civil and constitutional rights substantially motivated because he was black."  (Doc. 53 at 23 (citing FAC at ¶ 6).)  He alleges Defendants Killinger and Fowler joined the conspiracy, and Killinger grabbed Plaintiff's telephone.  (*Id.* (citing FAC at ¶ 23).)  Killinger, along with four unnamed Defendants, removed Plaintiff from the vehicle.  (*Id.* (citing FAC at ¶ 28).)  The FAC further alleges Defendants Fowler, Burns, Buell, Valente, Wells, and Rodriguez

threw Plaintiff to the ground.  (*Id.* (citing FAC at ¶ 31).)

To state a cognizable claim for assault under California law, a plaintiff must allege "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So v. Shin*, 212 Cal. App. 4th 652, 668-669 (2013) (internal citations omitted).

Irrespective whether Plaintiff's theory of liability is for assault or conspiracy to commit an assault, the FAC contains no allegations that Plaintiff did, in fact, suffer any apprehension during his encounter with any of the Defendants.  While the FAC states Killinger taunted Plaintiff and spoke in a verbally aggressive manner, there is no allegation in the FAC that Plaintiff reasonably believed he was about to be touched in a harmful or offensive manner by any Defendant or that it reasonably appeared to Plaintiff that any Defendant was about to carry out any threat.  The cause of action for assault contains nothing more than conclusory allegations.  *See Iqbal*, 556 U.S. at 678 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (quoting *Twombly*, 550 U.S. at 555).  Accordingly, Defendants' motion to dismiss is granted based upon Plaintiff's failure to allege facts sufficient to support a claim for assault.  *See Wilson v. City of Bakersfield*, No. 16-cv-00387-JLT, 2016 WL 2997496, at *8 (E.D. Cal. May 23, 2016) (dismissing assault claim on motion to dismiss for failure to plead facts showing apprehension).

### 2.   Battery (Cause of Action 2)

Defendants seek dismissal of the battery claim only as against Defendants Poole,

11

Berg, and Usma.[4]   (Doc. 46-1 at 15.)   They contend the FAC does not allege any unreasonable touching by Defendants Berg or Usma.  (*Id.*)  Plaintiffs also contend any touching by Defendant Poole related to placing Plaintiff in handcuffs was not unreasonable.[5]  (*Id.*)  Plaintiff does not cite any allegations of battery as to Defendant Berg. (Doc. 52 at 25.)  While Plaintiff's opposition alleges Defendant Usma "came in contact," he cites no allegations from the FAC to support this argument.  (*Id.*)  Finally, Plaintiff alleges he has sufficiently stated a claim against Defendant Poole, as he has alleged Poole "gratuitously" tightened the handcuffs that were placed on Plaintiff.  (*Id.*)

Under California law, a battery occurs when "(1) [a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff."  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 (2009) (citation omitted).  "A state law battery claim is a counterpart to a federal claim of excessive use of force.  In both, a plaintiff must prove that the peace officer's use of force was unreasonable."  *Id.* at 527 (citation omitted).  Thus, claims for excessive force in the course of an arrest, investigatory stop or other seizure of a free citizen are analyzed under the reasonableness standard of the Fourth Amendment.  *Id.* (citations omitted).  "The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer."  *Id.* (citation omitted).

The FAC fails to allege facts sufficient to support a claim for battery as against

---

[4] The battery claim is asserted against Defendants City of San Diego, Ryan Poole, Amy Buell, Katherine Jennings, Alyssa Tutterow, Christina Berg, Jardin Killinger, Austin Fowler, Kyle Valente, Jonathan Wells, Diego Usma, Jose Rodriguez, David Burns, and Doe 6-8, inclusive.  (FAC at 30.)

[5] Defendants also allege the battery claim against Poole is subsumed within the false imprisonment and unlawful arrest claims, but they provide no authority or analysis to support this position.   Accordingly, the Court declines to consider this portion of Defendants' argument.  *See Officia Imaging, Inc.*, 2018 WL 6137183, at *13; *Strother*, 2017 WL 6017137, at *7.

Defendants Berg and Usma, as there are no allegations that either of them engaged in intentional contact with Plaintiff and there no allegations either officer agreed to a common plan or design to commit a battery against Plaintiff.[6]  Accordingly, Defendants' motion to dismiss is granted based upon Plaintiff's failure to allege facts sufficient to support a claim for battery against Defendants Berg and Usma.

As to Defendant Poole, the FAC sufficiently states a claim for battery.   When Plaintiff complained that the handcuffs placed on him were too tight and hurting him, Poole responded that the handcuffs are "not supposed to be comfortable." (FAC at ¶ 36.) "Poole manipulated the handcuffs, making them tighter" and such conduct was "malicious and oppressive." (*Id.*)  Plaintiff alleges the "intentionally over-tightened handcuffs" caused him injury and they remained "over-tightened an unnecessarily prolonged time[.]" (*Id.* at ¶ 41.) Accordingly, Defendants' motion to dismiss is denied to the extent it seeks dismissal of the battery claim against Defendant Poole.

### 3.    *False Imprisonment (Cause of Action 3)*

Defendants seek dismissal of the false imprisonment claim against all Defendants. (Doc. 46-1 at 15-16.) They contend the FAC fails to allege any detention by Defendants Buell, Jennings, Tutterow, Berg, Killinger, Fowler, Valente, Wells, Usma, Rodriguez, or Burns. (*Id.* at 16.) They contend Defendants Poole and Ortiz lawfully detained Plaintiff based upon their reason to believe that his vehicle was not registered. (*Id.*)  Finally, they allege the claim against Defendant Killinger fails because Plaintiff consented to leave his vehicle. (*Id.*)  Plaintiff recites various allegations from the FAC, contending that he has

---

[6] Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 478 (Cal. 1994) (citation omitted). To state a claim for civil conspiracy, a plaintiff must allege the following elements: "(1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *City of Industry v. Fillmore*, 198 Cal. App. 4th 191, 211-212 (2011).

13

adequately pled that he was seized, not free to leave, confined to a patrol car, taken to the police station in handcuffs, taken to jail on charges that were false, and suffered harm as a result. (Doc. 52 at 25-29.) Plaintiff alleges these actions took place as part of a conspiracy. (*Id.*)

"Under California law, the elements of a claim for false imprisonment are: '(1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief.'" *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Easton v. Sutter Coast Hosp.*, 95 Cal. Rptr. 2d 316, 323 (Cal. Ct. App. 2000)).[7] "Restraint may be effectuated by means of physical force[], threat of force or of arrest[], confinement by physical barriers[], or by means of any other form of unreasonable duress." *Fermino v. Fedco, Inc.*, 872 P.2d 559, 567 (Cal. 1994) (citations omitted).

A "[p]olice officer who makes an arrest without a warrant and without justification may be held civilly liable for false arrest and imprisonment." *Dragna v. White*, 289 P.2d 428, 429–30 (Cal. 1955) (citations omitted). Where an officer has probable cause to arrest, however, he is not liable for false arrest. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007); *see also* CAL. PENAL CODE § 847(b) (police officer cannot be held civilly liable for false imprisonment where the officer, "acting within the scope of his or her authority," made a "lawful" arrest or "had reasonable cause to believe the arrest was lawful").

"Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 432

---

[7] In California, "false arrest and false imprisonment are not separate torts. False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology." *Collins v. City & Cty. of San Francisco*, 123 Cal. Rptr. 525, 526 (Cal. Ct. App. 1975) (internal quotation marks and citation omitted).

(9th Cir. 2010) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)).   In determining whether the officer had probable cause to arrest without a warrant, the Court looks to "the totality of circumstances known to the arresting officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime." *Id.* (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

As to the claim against Defendants Poole, Ortiz, and Killinger, Plaintiff has alleged each of the three elements for false imprisonment as these officers (1) seized and/or detained him (2) without any probable cause (3) and the seizure lasted from approximately 8:00p.m. on November 3, 2020, until his release from custody on November 4, 2020. (FAC at ¶¶ 12, 18, 26, 55.)  Plaintiff has also alleged that Defendants Berg, Fowler, Wells, and Valente, formed in a meeting to "concoct a materially false official story" to support the improper stop and arrest and false imprisonment and Plaintiff suffered damages. (*Id.* at ¶¶ 44, 59.)  Plaintiff further claims that Defendants Buell, Jennings, Tutterow, Fowler, Valente, Wells, Rodriguez, and Burns used physical force and caused him injury during the time he was improperly detained. (*Id.* at ¶ 31.)  Accordingly, the motion to dismiss the false imprisonment claim is denied as to Defendants Poole, Ortiz, Killinger, Berg, Buell, Jennings, Tutterow, Fowler, Valente, Wells, Rodriguez, and Burns.

The FAC, however, contains no allegations that Defendant Usma intentionally confined Plaintiff without lawful privilege, or that he formed as a group and agreed to commit the false imprisonment.  Accordingly, the motion to dismiss the false imprisonment claim is granted as to Defendant Usma.

### 4.   *Intentional Infliction of Emotional Distress (Cause of Action 4)*

Defendants contend the claim for intentional infliction of emotional distress ("IIED") should be dismissed against all Defendants because the FAC fails to allege facts showing outrageous conduct or severe emotional distress. (Doc. 46-1 at 17.)  In response, Plaintiff merely incorporates his argument from the false imprisonment claim by reference and contends the allegations satisfy the elements of the IIED claim. (Doc. 53 at 29.)

15

To establish a claim for IIED, the plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 960 (9th Cir. 2013) (quoting *Davidson v. City of Westminster*, 649 P.2d 894, 901 (Cal. 1982)).

"Outrageous" conduct is that which is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (quoting *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007)). The tort "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (quoting Rest.2d Torts, § 46, com. d). Instead, "severe emotional distress" means "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 821 (Cal. 1993)). Feelings of "discomfort, worry, anxiety, upset stomach, concern, and agitation" do not constitute severe emotional distress. *Id.* at 976–77. Accordingly, Plaintiff must present evidence that Defendants' conduct was "intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 976.

A claim for IIED can be premised upon allegations of excessive use of force. *See Blankenhorn*, 485 F.3d at 478 n.17 (summary judgment on plaintiff's IIED claim based upon alleged use of excessive force improper where factual disputes remained regarding whether officers' use of force was lawful); *Myles v. Cty. of San Diego by & through San Diego Cty. Sheriff's Dep't*, No. 15CV1985-JAH-BLM, 2021 WL 9349828, at *8 (S.D. Cal. Nov. 12, 2021) (denying motion for summary judgment on plaintiff's IIED claim where triable issues of fact remained on plaintiff's excessive force claim). While the "extreme and outrageous conduct" element is difficult to meet, Plaintiff has sufficiently stated a claim for relief at this stage of the pleadings as Plaintiff has presented extensive allegations of excessive use of force, and that he suffered severe emotional distress as a result of that

16

force.  (FAC at ¶ 59.)   Accordingly, Defendants' motion to dismiss the IIED claim is denied.

### 5.   Trespass to Chattels (Cause of Action 5)

Defendants contend the trespass to chattels claim should be dismissed against all Defendants because the only alleged harm to Plaintiff's property is a paint scratch on his vehicle and the FAC fails to identify who caused the alleged harm.  (Doc. 46-1 at 17.)  In response, Plaintiff merely incorporates his argument on the false imprisonment claim by reference and contends the allegations plead satisfy the elements of trespass to chattels. (Doc. 53 at 29.)

Trespass to chattel "lies where an intentional interference with the possession of personal property has proximately caused injury."  *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996).

Defendants cite no caselaw or authority to support dismissal of the claim.  Based on the limited arguments before the Court, the Court concludes Plaintiff's allegations that Defendants scratched his vehicle is sufficient to state a claim.  (FAC at ¶ 42); *see Cardenas v. Cty. of Tehama*, No. 18-cv-03021-TLN-DMC, 2021 WL 4033171, at *10 (E.D. Cal. Sept. 3, 2021) (denying motion to dismiss trespass to chattels claim relating to law enforcement's ransacking and damaging a car during a shootout based upon defendants' failure to develop its argument in briefing).  Therefore, the Court denies Defendants' motion to dismiss the trespass to chattels claim.

### 6.   False Light (Cause of Action 6)

Defendants contend the FAC does not allege any actions taken by Defendants to support a claim for false light.  (Doc. 46-1 at 17-18.)  Plaintiff cites the FAC's allegations that bystanders observed "the spectacle created by the unjustified seizure of Plaintiff" and an officer falsely stating that Plaintiff was being "uncooperative and yelling" when Plaintiff was cooperative.  (Doc. 53 at 29-30 (citing FAC at ¶¶ 17-18).)

California law recognizes four separate and distinct theories for a cause of action for invasion of privacy: "(1) intrusion, (2) public disclosure of private facts, (3) false light in

17

the public eye, and (4) appropriation." *Kapellas v. Kofman*, 459 P.2d 912, 921 n.16 (Cal. 1969). False light invasion of privacy requires a public disclosure which places plaintiff in a false light in a manner highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Fellows v. Nat'l Enquirer*, 721 P.2d 97, 99-100 (Cal. 1986) (citing Rest. 2d Torts, § 652E); *Price v. Operating Eng'rs Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011). A false light claim is in substance equivalent to a libel claim. *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 636 (2001) ("[a] false light claim, like libel, exposes a person to hatred, contempt, ridicule, or obloquy and assumes the audience will recognize it as such.").

When an individual is arrested and handcuffed, the fact that bystanders are able to observe the arrest is not enough to meet the element of publicity. *Whiting v. Dep't of Cal. Highway Patrol*, No. EDCV 18-2652-CAS-JEM, 2020 WL 1189833, at *16 (C.D. Cal. Jan. 23, 2020) (citing *Paquett v. Gonzalez*, No. CV 15-10015-AB-AGRx, 2017 WL 11309733, at *12 (C.D. Cal. Jan. 13, 2017)). "The term 'publicity' in the context of this tort 'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* Plaintiff has not alleged the element of publicity. The FAC does not allege there was any secondary or affirmative communication of the event that would allow the public at large to become aware of this incident beyond observing it in real time. *See Paquett*, 2017 WL 11309733, at *12 (dismissing false light claim relating to person's detainment outside of a restaurant). Based upon the foregoing, Defendant's motion to dismiss the claim for false light is granted.

### 7. Invasion of Privacy (Cause of Action 7)

Plaintiff claims an invasion of privacy based upon Defendants knowingly accessing and destroying data on his cellphone and accessing private scripture study notes from his Bible without a warrant. (FAC at ¶¶ 24-25, 28-30, 42, 117-125.) Defendants seek dismissal of the claim for invasion of privacy against all Defendants except Killinger.

18

(Doc. 46-1 at 18.)  Plaintiff responds by citing various allegations in the FAC contending that he sufficiently stated a claim for relief, and he has asserted that all Defendants acted as part of a conspiracy.  (Doc. 53 at 30 (citing FAC at ¶¶ 24-25, 28-30, 42, 118-120).)

The tort of intrusion has been defined as "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to the reasonable person."  *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365, 372 (2001) (citing Rest. 2d Torts, § 652B).  The intrusion tort consists of two elements: "(1) the intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  *Id.* (citation omitted).  As to the first element, the plaintiff must show the defendant "penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff.  The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."  *Id.* (citations omitted).  The police generally may not, without a warrant, search digital information on a cell phone seized from an individual.  *Riley v. California*, 134 S. Ct. 2473, 2493 (2014).

As to the scripture study notes, the FAC states "[Defendant] Wells opened [Plaintiff's] Bible and looked at his scripture study notes, inspected bags, and opened the passenger console and scattered his papers."  (FAC at ¶ 42.)  Defendants opening and reply brief sets forth no argument to support dismissal of the portion of the invasion of privacy claim concerning Defendant Wells' accessing Plaintiff's private scripture study notes, therefore, the Court is not inclined to address the issue *sua sponte*.  *See Officia Imaging, Inc.*, 2018 WL 6137183, *13; *Strother*, 2017 WL 6017137, at *7.

As to the portion of the invasion of privacy claim alleging Defendants accessed and destroyed data on Plaintiff's cell phone, the Court notes the FAC fails to allege facts as to how Defendants formed as a group and agreed to commit the alleged invasion of privacy as part of a conspiracy.  The FAC alleges "Defendants, including Doe 3 through Doe 15, inclusive" accessed Plaintiff's cellphone and "[o]ne Defendant, on information and belief,

19

who's identity remains to be determined specifically, disengaged from the group, accessed the cell phone, deleting the video, then placed the telephone in the vehicle, where the telephone was later found on the floor."  (FAC at ¶¶ 24, 30.)  It does not appear that Defendants seek dismissal of any claim against the Doe Defendants.  Given that the FAC contains no allegations for invasion of privacy against Defendants Poole, Ortiz, Buell, Jennings, Tutterow, Berg, Fowler, Valente, Usma, Rodriguez, and Burns, the Court grants Defendants' motion to dismiss the invasion of privacy claim as against these Defendants. The Court denies Defendants' motion to dismiss the invasion of privacy claim as against Defendants Killinger and Wells.

### 8.   *Violation of 18 U.S.C. § 1030 (Cause of Action 8)*

Defendants seek dismissal of the claim arising under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 ("Section 1030") on the basis that the FAC contains only conclusory allegations that the cellphone was "used in interstate commerce" and Plaintiff's video had a value in excess of $5,000.00.  (Doc. 46-1 at 18.)  Instead of addressing Defendants' argument, Plaintiff responds that he has alleged a conspiracy.  (Doc. 53 at 30.)

The CFAA "was originally designed to target hackers who accessed computers to steal information or to disrupt or destroy computer functionality, as well as criminals who possessed the capacity to 'access and control high technology processes vital to our everday lives . . .'  []  The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-1131 (9th Cir. 2009).  Section 1030 of CFAA allows a party to assert various types of violations, including a violation of Section 1030(a)(2), prohibiting "intentionally access[ing] a computer without authorization or exceed[ing] authorization access" and thereby obtaining "information from any protected computer[.]"  Under Section 1030(g), in order to bring a private right of action, the party must also allege a form of damage under Section 1030(c)(4)(A)(i) which includes "loss to 1 or more persons during any 1-year period . . .

aggregating at least $5,000 in value." A mere conclusion of damage or loss is insufficient. *See NovelPoster v. Javitch Canfield Group*, 140 F.Supp.3d 938, 949 (N.D. Cal. 2014) (dismissing CFAA claim for failure to adequately allege loss or damages beyond conclusory allegation of suffering damages and/or loss in excess of $5,000).

The FAC's conclusory allegation of damage alone warrants dismissal of this claim. *NovelPoster*, 140 F.Supp.3d at 949. Accordingly, Defendants' motion to dismiss the CFAA claim is granted.

### 9. Negligent Hiring, Training, and Supervision (Cause of Action 9)

The FAC asserts a claim for negligent hiring, training, and supervision against the City, Chief Nisleit, and Defendant Berg under the theory of negligence per se and negligence. (FAC at 38-56.) As to the theory of liability for negligence per se in Count 1, the FAC asserts violations of California Government Code § 1031, which sets forth the minimum standards for peace officers. (*Id.* at 38-39.) Count 2 asserts negligence based upon deliberate indifference to the need to train subordinates on the Fourth Amendment's requirements as to use of force. (*Id.*) Defendants seek dismissal of Count 1 for negligence per se, contending there is no factual basis to support any claim that the officers did not meet the minimum standards to be a peace officer. (Doc. 46-1 at 19.) Defendants seek dismissal of Count 2 for negligence, contending there is no direct liability or vicarious liability to the City for the acts or omissions of its employees because Plaintiff has failed to allege facts to support a special relationship between Plaintiff and Chief Nisleit or Defendant Berg. (*Id.*) As to Count 1, Plaintiff responds that the FAC contains numerous allegations "why the individual defendants were unqualified to act as police officers[.]" (Doc. 53 at 31.) As to Count 2, Plaintiff argues that he has adequately alleged a special relationship existed with Defendants as he was in their custody and control. (*Id.*)

California Government Code § 1031 sets forth the minimum standards for police officers, including being eighteen or older, a high school graduate, of good moral character, being fingerprinted and legally authorized to work in the United States. The FAC contains no allegations that any Defendant lacked these qualifications. Accordingly, Defendants'

1   motion to dismiss Count 1 of the negligent hiring, training, and supervision claim is
2   granted.

3   The California Tort Claims Act provides that "[e]xcept as otherwise provided by
4   statute[,]" a public entity "is not liable for an injury, whether such injury arises out of an
5   act or omission of the public entity or a public employee or any other person." CAL. GOV'T
6   CODE § 815.  Accordingly, a direct claim for negligent hiring, training, and supervision
7   against a public entity may not be maintained absent a statutory provision allowing it.  *See*
8   *Muzoz v. City of Union City*, 120 Cal. App. 4th 1077, 1111-1114 (2004) *overruled on other*
9   *grounds by Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 639 (2013).  However, a statutory
10  basis for liability exists under California Government Code § 815.2 which provides that a
11  public entity is "liable for injury proximately caused by an act or omission of an employee
12  of the public entity within the scope of his employment if the act or omission would, apart
13  from this section, have given rise to a cause of action against that employee or his personal
14  representative." CAL. GOV'T CODE § 815.2.  Therefore, a public entity is vicariously liable
15  for its employee's negligent acts or omissions within the scope of employment.  *Eastburn*
16  *v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1179-1780 (2003).  Additionally, a public
17  employee is liable to the same extent as a private person.  CAL. GOV'T CODE § 820.

18  The City's argument is well-taken that no direct claim against it can proceed for the
19  negligent hiring, training, and supervision claim.  *See Bonilla v. City of Covina*, No. 19-
20  cv-4314-PSG-JCx, 2019 WL 8013104, at *2 (C.D. Cal. Aug. 22, 2019) (citing *de Villers*
21  *v. Cty. of San Diego*, 156 Cal. App. 4th 238, 252 (2007).)  The City can, however, be
22  vicariously liable for a negligent hiring, training, and supervision claim if plaintiff properly
23  alleges a "special relationship" between supervisory personnel and the plaintiff.  *Id.* (citing
24  *C.A. v. Williams S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 877 (2012)).

25  District courts have declined to find a special relationship in cases involving law
26  enforcement and individuals who assert claims for excessive force and/or unlawful arrest,
27  thereby dismissing claims for negligent hiring, training, and supervision against the
28  government entity and/or its supervisors.  *See I.M. v. State of California*, No. 20-11174-

FMO-JEMx, 2022 WL 17080178, at *4-5 (C.D. Cal. Sept. 26, 2022) (dismissing negligent hiring, training, and supervision claim against the State based upon failure to allege sufficient facts to support claim); *Daluise v. McCauley*, No. 15-cv-02701-CAS-JEMx, 2015 WL 7573649, at *9 (C.D. Cal. Nov. 24, 2015) (dismissing negligent hiring, training, and supervision claim against sheriff, captain, and sergeant with leave to amend); *Bonilla*, 2019 WL 8013104, at *2 (dismissing negligent hiring, training, and supervision claim against city where plaintiff failed to allege existence of a special relationship to support vicarious liability claim). Plaintiff has failed to state sufficient facts establishing a special relationship between Chief Nisleit, Berg, and himself. The FAC contains only one conclusory allegation that "Defendants San Diego Police Chief David Nisleit, Doe 21 through 25, owed a duty . . . to train the individual defendants, and were in a special relationship with persons such as Plaintiff who were expected to come in contact with those officers." (FAC at ¶ 133); *see Iqbal*, 556 U.S. at 678 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation.") (quoting *Twombly*, 550 U.S. at 555). The FAC contains no allegation of a special relationship as to Defendant Berg. Consequently, the City cannot be vicariously liable under California Government Code § 815.2. *See Kendrick v. Cty. of San Diego*, No. 15cv2615-GPC-AGS, 2018 WL 1316618, at *10-11 (S.D. Cal. Mar. 14, 2018) (granting summary judgment on negligent hiring, training, and supervision claim against County and sheriff when plaintiff failed to allege a special relationship existed between plaintiff and sheriff). Accordingly, Defendants' motion to dismiss the negligent hiring, training, and supervision claim is granted.

### 10.  Negligence (Cause of Action 10)

The negligence claim against all fifteen named Defendants asserts Count 1 for negligence per se and Count 2 for negligence. (FAC at 56-57.) The claim incorporates nearly 150 paragraphs from the preceding sections of the complaint. (*Id.* at ¶ 149.)

Under California law, the elements of a negligence claim are "(1) defendant had a duty to use care, (2) defendant breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury." *Deloney v. Cty. of Fresno*, No.

23

117CV01336LJOEPG, 2019 WL 1875588, at *9 (E.D. Cal. Apr. 26, 2019) (citing *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 627 (2013)).

The FAC alleges Defendants deactivated their body-worn cameras during the encounter with Plaintiff, initiated a traffic stop of Plaintiff without probable cause, subjected Plaintiff to excessive force, destroyed a video on Plaintiff's cellphone, conducted a warrantless search of his vehicle, falsified police reports, among other wrongs. (*See generally* FAC.) Plaintiff has alleged Defendants breached their duty of care, which caused him injuries. (*Id.*) At this stage of the pleadings and considering the parties' limited briefing on the issue, the Court finds Plaintiff has sufficiently stated a claim for negligence. Defendants' motion to dismiss the negligence claim is denied.

### 11. *Tom Bane Civil Rights Act (Cause of Action 11)*

Plaintiff's Bane Act claim incorporates nearly 150 paragraphs by reference, which include allegations of excessive force and unlawful arrest. (FAC at ¶ 158.) Defendants seek dismissal of the claim, arguing it only contains conclusory allegations. (Doc. 46-1 at 21.)

The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of" California. CAL. CIV. CODE § 52.1(b). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 949 P.2d 941, 944 (Cal. 1998). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040–41 (9th Cir. 2018) (citation omitted). "[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983.'" *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting *Cameron*, 713 F.3d at 1022). In *Simmons v. Superior Court*, the

court of appeal noted that the majority of federal district courts have held "[w]here Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege of showing of coercion independent from the coercion inherent in the seizure or use of force." 7 Cal. App. 5th 1113, 1126 (2016) (internal citation omitted).

Because Plaintiff has stated a claim for excessive force, *infra*, Plaintiff does not need to allege a threat, coercion, or intimidation separate from the excessive force. *See infra* pp. 30-31. Accordingly, Defendants' motion to dismiss the Bane Act claim is denied.

### *12.   Ralph Act (Cause of Action 12)*

Defendants seeks dismissal of the Ralph Act claim, arguing the FAC contains nothing more than conclusory allegations of discriminatory motive. (Doc. 46-1 at 21.)

Under the Ralph Act, all people under California's jurisdiction have the right to be free from "violence . . . [or] intimidation . . . because of . . . any characteristic . . . in subdivision (b) or (e)[.]" Cal. Civil Code § 51.7(b)(1). Race and color are protected characteristics pursuant to section (b). *Id.* To state a Ralph Act claim, plaintiff must show: (1) the defendant committed or threatened violent acts against the plaintiff; (2) the violence or intimidation was motivated by their perception of a protected characteristic; (3) the plaintiff suffered an injury; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Piccini v. City of San Diego*, No. 21-cv-01343-W-KSC, 2022 WL 2788753 (July 14, 2022) (citation omitted); *see also Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 882 (2007).

The FAC sufficiently pleads a Ralph Act violation. To satisfy the first and second elements, the FAC describes various officers' use of force against Plaintiff which allegedly occurred due to Plaintiff's race. (FAC at ¶¶ 31, 36-37, 39.) Plaintiff further alleges physical and emotional injuries resulting from Defendants' conduct, which satisfies the third and fourth elements. (*Id.* at ¶ 59.) At this stage of the pleadings and considering the parties' limited briefing on the Ralph Act violation, Defendants' motion to dismiss the Ralph Act claim is denied.

### 13.   Civil Code § 52.3 (Cause of Action 13)

Plaintiff's thirteenth cause of action alleges Defendants violated Plaintiff's rights under California Civil Code § 52.3 ("Section 52.3"), part of what is commonly known as the Unruh Civil Rights Act.  Section 52.3 states in pertinent part:

> (a) No government authority, or agent of a governmental authority, . . . shall engage in a pattern of conduct by law enforcement officers that deprives any person of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States or by the Constitution or laws of California.

> (b) The Attorney General may bring a civil action in the name of people to obtain appropriate equitable and declaratory relief to eliminate the pattern or practice of conduct specified in subdivision (a) . . .

The parties dispute whether Section 52.3 provides a private right of action.  (Doc. 46-1 at 21-22; Doc. 53 at 35.)  Courts have held that Section 52.3 does not provide private right of action, especially given that legislative history of the statute provides no "obvious language" of an intent to create a private right of action.  *Richter v. Ausmus*, No. 19-cv-08300-WHO, 2021 WL 580055, at *11 (N.D. Cal. Feb. 16, 2021) (stating, "[a]s multiple California courts have confirmed, California Civil Code § 52.3 applies exclusively to actions brought by state prosecutors and does not contain a private right of action."); *Scocca v. Smith*, No. C-11-1318-EMC, 2012 WL 2375203, at *9-10 (N.D. Cal. June 22, 2012) (reviewing cases and legislative history of Section 52.3 and dismissing claim with prejudice); *Acevedo v. City of Farmersville*, No. 18-cv-01747-LJO-SAB, 2019 WL 3003996, at *16 n.5 (E.D. Cal. July 10, 2019) (collecting cases of several courts that have ruled Section 52.3 "does not create a private right of action and only vests authority in the California attorney general to pursue injunctive and declaratory relief."); *Garcia v. City of Ceres*, No. CV F 08-1720-LJO-SMS, 2009 WL 529886, at *11 (E.D. Cal. Mar. 2, 2009) (stating "there is nothing to suggest that California Civil Code section 52.3 provides a private right of action."); *Akhtarshad v. City of Corona*, No. EDCV 08-290-VAP-JCRx,

2000 WL 362130, at *7 n.4 (C.D. Cal. Feb. 10, 2009) (granting summary judgment on plaintiff's claim for violation of Section 52.3 finding "[t]here is no private right of action to enforce California Civil Code § 52.3.").

Absent a basis in text or legislative intent to confer a private right of action, the Court concludes that Plaintiff has failed to establish such a right under Section 52.3. Accordingly, Defendants' motion to dismiss Plaintiff's Section 52.3 claim is granted, and the claim is dismissed with prejudice.

### 14. Section 1983 Claims (Causes of Action 14-18)

The fourteenth through eighteenth causes of action are brought under Section 1983, and Defendants seek dismissal of each claim as outlined below. As an initial matter, Plaintiff contends he has sufficiently stated claims based upon all Defendants' failure to intercede when their fellow officers violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments. (Doc. 53 at 36-37.) Defendants reply that Plaintiff has failed to plead this theory of liability or any facts to support this theory of liability. (Doc. 56 at 5.)

"Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks and citation omitted). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* (citation omitted). "[B]ystander officers only have a duty to stop a violation when they know or have reason to know of the constitutional violation." *Monteilh v. Cty. of Los Angeles*, 820 F.Supp.2d 1081, 1092-1093 (2011) (citing cases).

The Court will consider the duty to intercede argument as it relates to each separate alleged violation of rights.

### a. Claims Against the City and Chief Nisleit

Defendants seek dismissal of the fourteenth through eighteenth causes of action against the City. (Doc. 46-1 at 22.) Plaintiff's response is silent as to dismissal of the City. (Doc. 53 at 35-36.) Accordingly, Defendants' motion to dismiss the fourteenth through eighteenth causes of action against the City is granted.

27

Defendants also seek dismissal of these causes of action against Chief Nisleit in his "official capacity." (Doc. 46-1 at 22.) Plaintiff responds that Chief Nisleit is being sued in his individual capacity for claims fourteen through eighteen, arguing that supervisors may be liable under Section 1983.

"A supervisor can be liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998) (internal alteration omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983."). To sue under a theory of supervisory liability, the plaintiff must show the supervisor's (1) "personal involvement in the constitutional deprivation," or (2) "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Id.* (internal quotation marks and citation omitted).

The FAC's allegations concerning the City's policies and practices appear to be directed at *Monell* liability, and Plaintiff has stated separate causes of action of this theory of liability. There is no allegation that Chief Nisleit was personally involved in any of the actions incident to Plaintiff's arrest. There are also no allegations that Chief Nisleit participated in or directed his subordinates' alleged constitutional violations, or knew of the violations and failed to act to prevent them. Accordingly, Defendants' motion to dismiss claims against Chief Nisleit based on supervisory liability in his individual capacity as to the fourteenth through eighteenth causes of action is granted. *See Mora v. City of Chula Vista*, No. 20-cv-779-GPC-AGS, 2021 WL 4220633, at *5 (S.D. Cal. Sept. 9, 2021)

28

(dismissing claim against chief of police based on supervisory liability); *Stein v. City of San Diego*, No. 19-cv-793-BAS-MDD, 2020 WL 1322953, at *5-6 (S.D. Cal. Mar. 20, 2020) (dismissing Chief Nisleit from lawsuit due to plaintiff's failure to state a claim).

### b. Fourth Amendment—False Arrest (Cause of Action 14)

Defendants contend the FAC only states allegations of false arrest against Defendant Poole, and therefore, all other Defendants should be dismissed. (Doc. 46-1 at 22-23.) They further allege "Plaintiff does not allege at what point an arrest occurred or by whom." (*Id.* at 22.) Plaintiff responds by citing to the circumstances underlying Plaintiff's detention and subsequent arrest. (Doc. 53 at 37-38.) Plaintiff also contends all individual Defendants, including Defendants Ortiz, Buell, Jennings, Tutterow, Berg, Killinger, Fowler, Valente, Wells, Diego, Usma, Rodriguez, and Burns acted as a part of conspiracy and thus are all liable for violations of his rights under the Fourth Amendment.[8] (Doc. 53 at 37-38.)

To state a Fourth Amendment claim for false arrest, the arrest must be alleged to have been made without probable cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998); *see also Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).)

To state a claim for conspiracy to violate civil rights, a plaintiff "must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crow v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotation marks and citation omitted). "To be liable, each participate in the conspiracy need not know the

---

[8] The Court dismissed Chief Nisleit from the fourteenth through eighteenth causes of action. *See supra* pp. 27-29.

exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (internal quotation marks and citation omitted). "Conclusory allegations of conspiracy without factual specificity are insufficient to state a claim for conspiracy under Section 1983." *Skinner v. Lee*, No. 19-01116-DMG-ADS, 2020 WL 3978064 (C.D. Cal. Apr. 10, 2020) (collecting cases).

The parties do not dispute that Plaintiff has stated a claim for false arrest against Defendant Poole. The FAC's factual allegations supporting the tort-based false imprisonment claim apply equally to the constitutional-based claim for false arrest, therefore, the Court incorporates its analysis by reference. *See supra* pp. 13-15. In short, the FAC alleges Defendants Poole, Ortiz, and Killinger participated in his seizure and/or detention without any probable cause. (FAC at ¶¶ 12, 18, 26, 55.) It further alleges Defendants Berg, Fowler, Wells, and Valente conspired to support the false arrest. (*Id.* at ¶¶ 44, 59.) Additionally, the FAC alleges "Defendants Ortiz, Fowler, Burns, Buell, Valente, Wells, Rodriguez, Tutterow, and later Jennings" observed Killinger's detention of Plaintiff and had a duty to intercede to prevent violation of his constitutional rights. (FAC at ¶ 26.) Accordingly, the Court denies Defendants' motion to dismiss the fourteenth cause of action as to Defendants Poole, Ortiz, Killinger, Berg, Buell, Jennings, Tutterow, Fowler, Valente, Wells, Rodriguez, and Burns. The Court grants Defendants' motion to dismiss the fourteenth cause of action against Defendant Usma, as there are no allegations in the FAC to support any theory of liability (i.e., conspiracy or failure to intercede).

### c. Fourth Amendment—Excessive Force (Cause of Action 15)

Defendants seek dismissal of the excessive force claim against Defendants Ortiz, Berg, and Usma due to a lack of allegations of force by these officers. (Doc. 46-1 at 23.) They contend Defendant Poole should be dismissed, as his act of placing handcuffs on Plaintiff is insufficient to state a claim for excessive force.[9] (*Id.*) Plaintiff responds by

---

[9] Defendants also allege the excessive force claim against Poole is subsumed within the false imprisonment and unlawful arrest claims, but they provide no authority or analysis to

citing the FAC's allegations that Poole intentionally tightened Plaintiff's handcuffs after he complained that they were too tight, and Berg witnessed this. (Doc. 53 at 39 (citing FAC at ¶¶ 36-37, 54).)   He contends Defendants Ortiz and Usma acted as integral participants and conspirators in the excessive force. (*Id.* at 39-40.)

A claim under Section 1983 for excessive use of force during an arrest is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395-99 (1989). "Under the Fourth Amendment, officers must use such force as is 'objectively reasonable' under the circumstances." *Ross v. City of Ontario*, 66 F. App'x 93, 95 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 397). To determine if the force used is "objective reasonable," the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 397 (internal quotation marks and citations omitted). In evaluating whether the force is reasonable, courts look at factors including "the severity of the crime at issue, whether the suspect posts an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

As to Defendant Berg, the FAC contains no allegations that she used any force upon Plaintiff. However, the FAC alleges Berg witnessed Poole over-tighten handcuffs on Plaintiff and she failed to intercede. (FAC at ¶¶ 36-37, 39, 40.) As to Defendants Ortiz and Usma, there are no allegations either officer used any force upon Plaintiff, conspired with others to use force, or had the opportunity to intercede. *Cunningham*, 229 F.3d at 1289. Accordingly, Defendants' motion to dismiss the fifteenth cause of action is denied as to Defendant Berg and granted as to Defendants Ortiz and Usma.

---

support this position. Accordingly, the Court declines to consider this portion of Defendants' argument. *See Officia Imaging, Inc.*, 2018 WL 6137183, at *13; *Strother*, 2017 WL 6017137, at *7.

#### d. Fourth Amendment Unreasonable Search (Cause of Action 16)

Defendants seek dismissal of the sixteenth cause of action against Defendants Poole, Oritz, Buell, Tutterow, Berg, Killinger, Fowler, and Burns, as Plaintiff does not allege any of these Defendants participated in a search.  (Doc. 46-1 at 23.)  Plaintiff responds that the FAC alleges Defendants Buell, Tutterow, Killinger, Fowler, and Burns "had all put their hands on Plaintiff" and Defendants Poole, Oritz, Buell, Tutterow, Berg, Killinger, Fowler, and Burns formed a conspiracy to violate Plaintiff's rights.  (Doc. 53 at 40.)

The Fourth Amendment prohibits "unreasonable searches and seizures." Reasonableness is generally assessed by carefully weighing "the nature and quality of the instruction of the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

The FAC alleges Killinger took Plaintiff's cellphone and accessed it.  (FAC at ¶ 30.) The FAC states "[t]he defendants pulled [Plaintiff's] shirt up, exposing his midriff and underwear to those gathered on the street watching the spectacle, causing [Plaintiff] humiliation and shame."  (*Id.*)  While the FAC does not specify which Defendants searched Plaintiff's person, it alleges Buell, Tutterow, Fowler, and Burns were present at the time of this search.  (*Id.* at ¶ 31.)  There are no allegations that Poole, Ortiz, or Berg conducted a search of Plaintiff's person, vehicle, or cellphone, but it alleges these "Defendants collaborated to concoct a materially false 'official' story . . . to justify the wrongful conduct committed against Plaintiff" and conceal the unlawful search.  (*Id.* at ¶ 44.)  At this stage of the pleadings, Plaintiff has stated a claim against each of the foregoing Defendants. Accordingly, Defendants' motion to dismiss the sixteenth cause of action against Defendants Poole, Oritz, Buell, Tutterow, Berg, Killinger, Fowler, and Burns is denied.

#### e. Fourteenth Amendment—Fabrication of Evidence (Cause of Action 17)

Defendants argue that no Fourteenth Amendment violation occurred because no criminal charges were filed against Plaintiff, thus, the seventeenth cause of action should

be dismissed.  (Doc. 46-1 at 23.)  Defendants alternatively argue Plaintiff has not alleged any fabrication of evidence by Defendants Ortiz, Berg, Usma, Rodriguez, and Burns, therefore, the claim should be dismissed against these Defendants.  (*Id.*)  Plaintiff responds that Berg, Usma, Rodriguez and Burns are liable under a theory of conspiracy.  (Doc. 53 at 40.)  He further alleges Ortiz's report and phone call to the jail caused him to remain in custody which resulted in a loss of liberty.  (*Id.* at 41.)

A claim for deliberate fabrication of evidence requires a plaintiff "to show that the criminal proceedings against him—and consequent deprivations of liberty—were caused by [defendant's] malfeasance in fabricating evidence."  *McDonough v. Smith*, 139 S.Ct. 2149, 2156 (2019); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To prevail on such a claim, a plaintiff must prove that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).  The plaintiff must also prove the deliberately fabricated evidence was used to criminally charge, prosecute, or convict the plaintiff.  *See* Model Civ. Jury Instr. 9th Cir. 9.33 (2022); *see also Hunt v. City of Boulder City*, 799 F. App'x 533, 535 (9th Cir. 2020) (granting summary judgment, in part, on qualified immunity of officer on fabrication of evidence claim because plaintiff not charged "on basis of" alleged falsified evidence); *Ramirez v. City of Los Angeles*, 593 F. App'x 652, 653 (9th Cir. 2015) (affirming district court's dismissal of Fourteenth Amendment claim because plaintiff was not criminally charged after officer's investigation concluded).

The FAC confirms the district attorney declined to prosecute any charges against Plaintiff.  (FAC at ¶ 65.)  In the absence of any criminal charge, prosecution, or conviction against Plaintiff, Plaintiff fails to state a claim for relief.  *See* Model Civ. Jury Instr. 9th Cir. 9.33 (2022); *see also Hunt*, 799 F. App'x at 535; *Ramirez*, 593 F. App'x at 653.  Accordingly, Defendants' motion to dismiss the seventeenth cause of action is granted.

### f.   First Amendment—Retaliation (Cause of Action 18)

The FAC's eighteenth cause of action asserts a Section 1983 violation claiming that

33

Defendants retaliated against Plaintiff for "engaging in speech and expressive conduct" protected by the First Amendment. (FAC at 66-68.) Defendants argue dismissal of this claim is appropriate as it is entirely based upon conclusory allegations. (Doc. 46-1 at 24.) Plaintiff responds by citing to various allegations throughout the FAC which support his claim. (Doc. 53 at 41-43.)

To state a claim for retaliation under the First Amendment, a plaintiff must show that: "(1) he was engaged in a constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity[,] and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citation omitted). "Once a plaintiff has made such a showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *Id.* (citation omitted). A "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for his arrest." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019).

Here, the FAC alleges Defendants Poole and Ortiz called for additional officers after Plaintiff complained of the pretextual stop. (FAC at ¶¶ 15-16.) It alleges Defendant Killinger made non-consensual contact with Plaintiff after he began videoing the encounter on his cellphone, and all other Defendants then retaliated against Plaintiff for exercising his rights including by battering him, falsely imprisoning him, interfering with his property, and searching him and his property. (*Id.* at ¶¶ 23, 25, 29, 207.) At this stage of the pleadings, Plaintiff has stated a claim for retaliation. Accordingly, Defendants' motion to dismiss the seventeenth cause of action is denied.

### 15. *Monell Claims (Causes of Action 19-21)*

The FAC's nineteenth through twenty-first causes of action assert *Monell* claims based upon official policies and customs, failure to train, and supervisor liability/ratification. (FAC at 68-72.) Defendants seek dismissal of all three *Monell* causes of action on the basis that they contain nothing more than conclusory allegations. (Doc.

46-1 at 24-26.)

Municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of their employees. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. To prevail in a civil action against a local governmental entity, the plaintiff must establish "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989)).

A plaintiff may establish municipal liability under 42 U.S.C. § 1983 in one of three ways. "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may establish that a governmental official with "final policy-making authority" ratified a subordinate's unconstitutional conduct. *Id*. at 1346–47 (citations omitted). Finally, a municipality may be held liable for inadequate training of its employees, but only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio*, 489 U.S. at 390.

a. Official Policies and Customs (Cause of Action 19)

Plaintiff alleges the City is liable for unconstitutional policies or customs that are "reasonably interpreted to authorize and approve" the conduct of the individual

35

Defendants.   (FAC at ¶ 218.)   Defendants argue Plaintiff fails to link any alleged constitutional violations to any specific policy or custom, and thus, the claim should be dismissed.  (Doc. 46-1 at 25.)  Plaintiff responds by citing to the FAC's allegations that outline the City's policies and/or failure to implement policies.  (Doc. 53 at 45 (citing FAC at ¶¶ 135, 143, 144).)

"[A] policy is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Oviatt*, 954 F.2d at 1477 (internal quotation marks and citation omitted).   A custom is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citation omitted).

Plaintiff has alleged the City has continued "despite adverse consequences and notice, to engage in unconstitutional searches and seizures, use of excessive force, false arrests, fabrication of evidence" which amounts to an official policy or custom of the City. (FAC at ¶ 137 (f)-(g).)  He further alleges the City has inadequate policies relating to racial profiling, use of force, lawful searches, and several other Constitutional and legal requirements.  (FAC at ¶¶ 135, 143, 144.)  Plaintiff alleges, but for the existence of these harmful customs and practices, he would not have been injured.  (*Id.* at ¶¶ 137(i), 143.) Based on the allegations in the FAC, the Court concludes that Plaintiff has stated a *Monell* claim based upon the City's policies and customs.  *Said v. Cty. of San Diego*, No. 12-cv-2437-GPC-RBB, 2014 WL 231039, at *7-8 (S.D. Cal. Jan. 21, 2014) (denying motion to dismiss *Monell* claim when complaint contained allegations regarding inadequate policies). Accordingly, the Court denies Defendants' motion to dismiss the nineteenth cause of action.

### b. Failure to Train (Cause of Action 20)

Plaintiff alleges the City's failure to train its officers resulted in the violation of his rights under the Fourth, First, and Fourteenth Amendments.  (FAC at ¶ 224.)  Defendants

36

claim Plaintiff's allegations for failure to train are too vague to state a claim, and the two other cases he cites to put Defendants on notice are exceptionally different than that the instant case. (Doc. 46-1 at 26.)  Plaintiff responds by citing to the FAC's allegations that the City had notice of the inadequacy of its training programs given its prior lawsuits involving claims for excessive force, false arrest, and deliberate fabrication of evidence. (Doc. 53 at 45 (citing FAC at ¶¶ 136-137).)

To state a *Monell* claim for failure to train, a plaintiff must allege: (1) inadequate training and (2) deliberate indifference to the rights of persons with whom the untrained employees come into contact.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation omitted).  Deliberate indifference is a stringent standard of fault.  It requires a showing of:

> Proof that a municipal actor disregarded a known or obvious consequence of his action.  Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

*Id.* at 61-62 (internal quotation marks and citation omitted).  Typically "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train."  *Id.* at 62 (internal quotation marks and citation omitted).

The FAC alleges the City failed to train its on use of force under the Fourth Amendment.  (FAC at ¶ 134.)  It also recites two cases involving the City, which involved claims of excessive use of force.  (*Id.* at ¶ 137.)  Plaintiff has sufficiently stated a claim that the City was "deliberately indifferent" to inadequate training concerning the use of excessive force.  Plaintiff has not, however, sufficiently stated a claim as to the inadequacy of training as to searches and seizures or concerning rights under the First and Fourteenth Amendments.  Accordingly, Defendants' motion is granted to the extent it seeks dismissal of the failure to train *Monell* claim concerning searches and seizures and rights under the

First and Fourteenth Amendments.  Defendants' motion is denied to the extent it seeks dismissal of the failure to train *Monell* claim concerning the use of excessive force.

### c.  Supervisor Liability (Cause of Action 21)

The FAC alleges the City knew of the individual Defendants' unlawful conduct and ratified that conduct by failing to discipline them.  (FAC at ¶¶ 228-229.)  Defendants contend this claim should be dismissed as it is entirely based upon conclusory allegations.  (Doc. 46-1 at 26.)  Plaintiff responds that it has sufficiently alleged ratification as the City received notice of this claim and failed to respond and, during the incident itself, supervisors approved the individual Defendants' wrongful conduct.  (Doc. 53 at 46.)

To establish liability on a ratification theory, a plaintiff must show "a policymaker approve[d] a subordinate's decision and the basis for it."  *Gillette*, 979 F.2d at 1348 (citation omitted).  The authorized policymaker must have knowledge of the constitutional violation and actually approve of it.  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  "A mere failure to overrule a subordinate's actions, without more, is insufficient[.]"  *Id.* (citation omitted).

As an initial matter, neither party provides any caselaw or authority that a City's failure to respond to a claim filed under the California Tort Claims Act constitutes ratification of an officer's conduct.  The same goes for a law enforcement officer's failure to produce police records.  In any event, the FAC does not allege that Chief Nisleit was aware of any actions of Defendants or that he made a "conscious, affirmative choice" to approve such actions.  *Dasovich v. Contra Cost Cty. Sheriff Dep't*, No. 14-cv-00258-MEJ, 2014 WL 4652118, at *6 (N.D. Cal. Sept. 17, 2014) (granting motion to dismiss *Monell* ratification claim when complaint contained no allegations of affirmative action by final policymaker).  Accordingly, Defendants' motion to dismiss the twenty-first cause of action is granted.

### 16.  42 U.S.C. § 1985(2) (Cause of Action 22)

The twenty-second cause of action alleges a violation of 42 U.S.C. § 1985(2).  (FAC at 72-73.)  It alleges Defendants conspired "to impede or hinder, or obstruct or defeat due

course of justice in the State of California, County and City of San Diego" with the intent to deny Plaintiff equal protection of the law.  (*Id.* at ¶¶ 235-236.)

The second clause of 42 U.S.C. § 1985(2) provides a cause of action for conspiracy to obstruct justice in state courts "with intent to deny to any citizen the equal protection of the laws."

As Defendants correctly note, Plaintiff has failed to plead any facts relating to obstruction of justice in state court.  Thus, Defendants' motion to dismiss Plaintiff's twenty-second cause of action is granted.

### 17.  *42 U.S.C. § 1985(3) (Cause of Action 23)*

The twenty-third cause of action asserts a violation of 42 U.S.C. § 1985(3) for conspiracy.  (FAC at 72-73.)  Defendants argue this claim fails because it only makes "conclusory allegations to support his claim that Defendants entered into an agreement and action taken were racially motivated."  (Doc. 46-1 at 27.)  Plaintiff responds that the FAC contains extensive allegations he was the subject of racial profiling based on being black. (Doc. 56 at 40.)

To state a claim for conspiracy under 42 U.S.C. § 1985(3) the plaintiff must show: (1) a conspiracy; (2) "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an "act in furtherance" of the conspiracy; and (4) an injury or deprivation of rights.  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).   The second element requires the plaintiff to identify a legally protected right and demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  *Id.*; *see also Radelunas v. City of Vallejo*, No. 21-cv-00394-KJM-JDP, 2022 WL 329200, at *7 (E.D. Cal. Feb. 3, 2022); *O'Handley v. Padilla*, 579 F.Supp.3d 1163, 1185 (2022) (collecting cases).

Other than Plaintiff's own statements that he was being racially profiled, the FAC fails to allege facts showing Defendants entered a conspiracy that was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  *Sever*, 978

F.2d at 1536.  Accordingly, Defendants' motion to dismiss the twenty-third cause of action is granted.

### 18.   42 U.S.C. § 1986 (Cause of Action 24)

The twenty-fourth cause of action asserts a violation of 42 U.S.C. § 1986 ("Section 1986"), which provides a cause of action for damages where a valid claim for relief has been stated under 42 U.S.C. § 1985.  (FAC at 72-73.)

Section 1986 provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act[.]" 42 U.S.C. § 1986.

Since Plaintiff has not stated a claim under Section 1985, his claim fails under Section 1986.  *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).  Accordingly, Defendants' motion to dismiss the twenty-fourth cause of action is granted.

### C.   Leave to Amend

Neither the City Defendants nor Plaintiff address whether leave to amend should be granted.  When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). When determining whether to grant leave to amend, courts generally consider five factors, known as the *Foman* factors as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3) undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the plaintiff has previously amended the complaint.  *Id*.  The Ninth Circuit has held that "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

(9th Cir. 2003).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*. (emphasis omitted).

Plaintiff has only amended his complaint once, after the parties stipulated to dismiss certain defendants and stipulated to Plaintiff filing an amended complaint.  (Docs. 1, 34, 36, 37.)  There has been no showing of undue delay, bad faith on the part of Plaintiff, or undue prejudice to Defendants.  The Court holds that the thirteenth cause of action for violation of Civil Code § 52.3 is dismissed with prejudice.  As to the other causes of action, the Court declines at this stage of proceedings to find that amendment of the complaint would be futile.  Accordingly, the Court grants Plaintiff leave to file an amended complaint.

## IV.   CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** Defendants' motion to dismiss the first cause of action for assault;

- **GRANTS** Defendants' motion to dismiss the second cause of action for battery against Defendants Berg and Usma, and **DENIES** the motion against Defendant Poole;

- **GRANTS** Defendants' motion to dismiss the third cause of action for false imprisonment against Defendant Usma, and **DENIES** the motion against Defendants Poole, Ortiz, Killinger, Berg, Buell, Jennings, Tutterow, Fowler, Valente, Wells, Rodriguez, and Burns;

- **DENIES** Defendants' motion to dismiss fourth cause of action for intentional infliction of emotional distress;

- **DENIES** Defendants' motion to dismiss the fifth cause of action for trespass to chattels;

- **GRANTS** Defendants' motion to dismiss the sixth cause of action for false light;

- **GRANTS** Defendants' to dismiss the seventh cause of action for invasion of privacy against Defendants Killinger and Wells, and **DENIES** the motion against

41

Defendants Poole, Ortiz, Buell, Jennings, Tutterow, Berg, Fowler, Valente, Usma, Rodriguez, and Burns;

- **<u>GRANTS</u>** Defendants' motion to dismiss the eighth cause of action for violation of the Computer Fraud and Abuse Act;

- **<u>GRANTS</u>** Defendants' motion to dismiss the ninth cause of action for negligent hiring, training, and supervision;

- **<u>DENIES</u>** Defendants' motion to dismiss the tenth cause of action for negligence;

- **<u>DENIES</u>** Defendants' motion to dismiss the eleventh cause of action for violations of the Tom Bane Civil Rights Act;

- **<u>DENIES</u>** Defendants' motion to dismiss the twelfth cause of action for violations of the Ralph Civil Rights Act;

- **<u>GRANTS</u>** Defendants' motion to dismiss the thirteenth cause of action for violation of Civil Code § 52.3, and the claim is dismissed with prejudice;

- **<u>GRANTS</u>** Defendants' motion to dismiss the fourteenth cause of action for Section 1983 claim alleging Fourth Amendment violations for false arrest against Defendants Chief Nisleit, the City, and Usma, and **<u>DENIES</u>** the motion against Defendants Poole, Ortiz, Killinger, Berg, Buell, Jennings, Tutterow, Fowler, Valente, Wells, Rodriguez, and Burns;

- **<u>GRANTS</u>** Defendants' motion to dismiss the fifteenth cause of action for Section 1983 claim alleging Fourth Amendment violations for excessive force against Defendants Chief Nisleit, the City, Ortiz, and Usma, and **<u>DENIES</u>** the motion against Defendant Berg;

- **<u>GRANTS</u>** Defendants' motion to dismiss the sixteenth cause of action for Section 1983 claim alleging Fourth Amendment against Defendants Chief Nisleit and the City, and **<u>DENIES</u>** the motion against Defendants Poole, Oritz, Buell, Tutterow, Berg, Killinger, Fowler, and Burns;

/ / /

42

- **GRANTS** Defendants' motion to dismiss the seventeenth cause of action for Section 1983 claim alleging Fourteenth Amendment violations based upon deliberate fabrication of evidence;

- **GRANTS** Defendants' motion to dismiss the eighteenth cause of action for Section 1983 claim alleging retaliation for exercise of First Amendment rights against Defendant Chief Nisleit and the City, and **DENIES** the motion against Defendants Poole, Ortiz, Buell, Jennings, Tutterow, Berg, Killinger, Fowler, Valente, Wells, Usma, Rodriguez, and Burns;

- **GRANTS** Defendants' motion to dismiss the nineteenth cause of action for Section 1983 *Monell* claim based upon official policies and customs against Defendant Chief Nisleit, and **DENIES** the motion against Defendant City of San Diego;

- **GRANTS** Defendants' motion to dismiss the twentieth cause of action for Section 1983 *Monell* claim based upon failure to train against Defendant Chief Nisleit, **GRANTS** the motion based upon failure to train on searches and seizures and rights under the First and Fourteenth Amendments against Defendant City of San Diego, and **DENIES** the motion based upon failure to train on use of excessive force against Defendant City of San Diego;

- **GRANTS** Defendants' motion to dismiss the twenty-first cause of action for Section 1983 *Monell* claim on supervisory liability;

- **GRANTS** Defendants' motion to dismiss the twenty-second cause of action for violation of 42 U.S.C. § 1983(2);

- **GRANTS** Defendants' motion to dismiss the twenty-third cause of action for violation of 42 U.S.C. § 1983(3); and

- **GRANTS** Defendants' motion to dismiss the twenty-fourth cause of action for violation of 42 U.S.C. § 1986;

- The Court's rulings above do not apply to any Doe Defendants; and

- Plaintiff is **GRANTED** twenty-one (21) days leave from the date of this Order in which to file an amended complaint which cures all the deficiencies of pleading noted.  Plaintiff is cautioned to comply with Federal Rule Civil Procedure Rule 8(a). **IT IS SO ORDERED.**

DATE:  March 2, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

44