UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE BLACK,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 21-cv-01990-RBM-JLB<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR LEAVE TO CONDUCT DEPOSITION BY VIDEO AND TO PREPARE TRANSCRIPT USING VOICE RECOGNITION TECHNOLOGY**<br><br>**[ECF No. 153]** |

Before the Court is an Ex Parte Application for Leave to Conduct Deposition by Video and to Prepare Transcript Using Voice Recognition Technology According to FRCP Rule 30(b)(3)(A) ("Motion") filed by Plaintiff Lance Black ("Plaintiff"). (ECF No. 153.) Plaintiff moves the court for leave to conduct his remaining depositions in this matter "before Casey Stark, Notary Public and Videographer, and use real-time voice recognition software . . . for transcript preparation during or following the deposition." (*Id*. at 1.) Defendant City of San Diego and the individual defendants other than Alyssa Tutterow filed an opposition (ECF Nos. 160, 164, 171) which Defendant Alyssa Tutterow then

joined (ECF No. 162). Plaintiff filed a reply (ECF No. 165) and a supplemental declaration (ECF No. 170). Defendants filed their second supplement to their opposition on April 9, 2025. (ECF No. 171.) For the reasons set forth below, Plaintiff's Motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

On November 27, 2021, Plaintiff commenced this civil rights action against the City of San Diego, San Diego Police Department, San Diego County, the San Diego Sherriff's Department, and a number of individual officers ("the Officer Defendants"). (ECF No. 1.) On March 5, 2024, Plaintiff filed the operative complaint, the Third Amended Complaint, against the City of San Diego and the Officer Defendants (collectively, "Defendants"). (ECF No. 76 ("TAC").) The TAC contains the following causes of action: assault, battery, false imprisonment, intentional infliction of emotional distress, trespass to chattels, invasion of privacy, computer fraud and abuse, negligence, violation of Cal. Civil Code § 52.1(a), violation of Cal. Civil Code § 51.7, violations of 42 U.S.C. § 1983, including false arrest, equal protection and due process, excessive force, unreasonable search, retaliation, and *Monell* claims based on official policy and custom and failure to train. (TAC at 46–95.)

### B. Background of Instant Motion

During the Court's March 21, 2025, Status Conference, Plaintiff's counsel stated his intent to file the instant motion. (ECF No. 149.) Plaintiff then filed the present Motion on March 27, 2025. (ECF No. 153.) The City of San Diego and the Officer Defendants opposed. (ECF Nos. 160, 162.) On April 2, 2025, the Court informed Defendants that the link provided to the City of San Diego's Information Technology Policy on Artificial Intelligence and Generative Artificial Intelligence Policy in their opposition required authorization and ordered Defendants to file the policy as a supplement to their opposition. (ECF No 163.) They immediately did so. (ECF No. 164.) Plaintiff filed a reply on April 2, 2025. (ECF No. 165.) Additionally, on April 2, 2025, the Court ordered Plaintiff

to file a supplement which identified a sampling of cases in which Casey Stark acted as a deposition videographer in federal courts in California. (ECF No. 166.) A Status Conference was held on April 2, 2025, to discuss the Motion. (ECF No. 168.) During the Status Conference, Defendants were ordered to supplement their opposition to include any additional information for the Court's consideration. (ECF No. 169.) Plaintiff filed a second supplemental declaration of Casey Stark on April 4, 2025 (ECF No. 170), and Defendants filed their second supplement to their opposition on April 9, 2025 (ECF No. 171).

Plaintiff seeks leave to conduct depositions in this action before Casey Stark, who is a Notary Public and Videographer, and for an order approving the use of transcripts of those depositions, which would initially be generated by the real-time voice recognition software Zoom AI Companion and subsequently reviewed, revised (as necessary), and certified by Mr. Stark, for all purposes, including motions practice and trial. (ECF Nos. 153 at 1–2; 165 at 2.)

## II.     LEGAL STANDARD

The Court has broad authority to manage the discovery process under Federal Rule of Civil Procedure 26, which expressly allows the Court to enter orders to manage discovery to avoid undue burden and expenses. Fed. R. Civ. P. 26(c)(1). Federal Rule of Civil Procedure 30 governs the procedure by which depositions are taken by oral examination and imposes certain requirements. Specifically, "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1). "The party who notices the deposition must state in the notice the method for recording the testimony. Fed. R. Civ. P. 30(b)(3)(A). "Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means." *Id*.

"[A] deposition must be conducted before an officer appointed or designated under Rule 28," unless the parties stipulate otherwise. Fed. R. Civ. P. 30(b)(5)(A). "Within the United States, . . . a deposition must be taken before: (A) an officer authorized to administer oaths either by federal law or by the law in the place of examination; or (B) a person

appointed by the court where the action is pending to administer oaths and take testimony." Fed. R. Civ. P. 28(a)(1).  The officer must "certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony." Fed. R. Civ. P. 30(f)(1).  Notably, the existence of confidential materials, "propels the task of videotaping a deposition beyond a simple task to a complicated one." *Schoolcraft v. City of New York*, 296 F.R.D. 231, 240 (S.D.N.Y. Nov. 21, 2013).

The noticing party must bear costs of recording the deposition.  Fed. R. Civ. P. 30(b)(3)(A).  Moreover, while "[p]laintiff's *in forma pauperis* status entitles him to a waiver of the filing fee and free service of process by United States Marshals . . . it does not entitle him to waiver of witness fees, mileage or deposition officer fees." *Jackson v. Woodford*, No. CIV 05CV0513-L NLS, 2007 WL 2580566, at *1 (S.D. Cal. Aug. 17, 2007) (citing 28 U.S.C. § 1915(a) and *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989)).

### III.  DISCUSSION

Plaintiff requests that the Court approve Casey Stark "to act as a deposition officer," that the remaining depositions be "recorded by Voice Recognition Technology," that Mr. Stark be able to "certify the transcripts of the depositions he has presided over," and that those transcripts "so properly certified be admissible for the purposes of motions, compliance with Rule 26, and usable at trial." (ECF No. 153 at 4.)

Plaintiff contends that "there is no requirement" that "grants a monopoly to certified stenographers to prepare transcripts of proceedings in federal court." (*Id*. at 2.)  Plaintiff asserts that financial barriers limit his access to a traditional certified stenographic court reporter because Plaintiff is "essentially indigent," so Plaintiff's counsel has been advancing litigation expenses and there are at least thirteen more depositions to be taken. (*Id*. at 3, 5.)  For the four depositions already conducted, Plaintiff's counsel estimates the average cost was approximately $4,000 apiece.  (*Id*. at 5.)  Plaintiff's counsel has contracted with Mr. Stark, a professional legal videographer who holds a Notary Public commission, at an estimated rate of about $1,455 per seven-hour deposition, inclusive of transcript and exhibits. (*Id*. at 6–7.)  Plaintiff argues that Mr. Stark is an experienced

professional legal videographer, court reporters already utilize artificial intelligence ("AI") tools to assist in transcription, and Mr. Stark will be proofreading and personally certifying the transcript produced by the Zoom AI Companion as a verbatim recording which is "the same function and objective as a shorthand reporter." (ECF No. 165 at 1–2.)

Defendants do not oppose Mr. Stark acting as a videographer or deposition officer, but rather oppose Mr. Stark utilizing the Zoom AI Companion to create a transcript of the deposition and then certifying the transcript without having the necessary qualifications of a court reporter. (ECF No. 171 at 1.) Defendants argue that allowing AI tools access to sensitive, confidential information raises privacy and data protection concerns. (ECF Nos. 160 at 2; 171 at 2.) Defendants contend that the City of San Diego's Information Technology Policy on Artificial Intelligence and Generative Artificial Intelligence Policy "prohibits submission of any sensitive, confidential, regulated, or [personal identifying information] to generative AI technology platforms without appropriate internal controls and processes." (ECF Nos. 160 at 2; 164 at 9.) Defendants also argue that the Protective Order (ECF Nos. 32, 156) issued in this case does not allow for confidential information such as police personnel files and confidential internal affairs investigations to be provided to a third-party AI platform. (ECF Nos. 160 at 2; 171 at 2.) Defendants further argue that Mr. Stark is not qualified to certify a transcript, and they express the concern that a "recording and AI transcription will not accurately capture" nuances that "certified court reporters (or transcriptionists) are trained to handle and have experience handling." (ECF No. 171 at 3.) Defendants assert that a certified court reporter or transcriptionist should be used. (*Id*. at 1–2.)

For the reasons set forth below, the Court denies Plaintiff's request to utilize Mr. Stark in the capacity of deposition officer/transcriptionist.

First, the Court notes that while Mr. Stark is a professional legal videographer, he has not served as a deposition officer before. (ECF No. 170 at 2.) Although Mr. Stark asserts that he is planning to take the Certified Deposition Reporter ("CDR") exam, he has not yet passed the exam. (*Id*. at 4.) Moreover, as Defendants point out, passing the CDR

exam would allow Mr. Stark "to capture[] the record by digitally recording depositions" but it would "not allow him to certify a transcript." (ECF No. 171 at 2.)  To certify transcripts one must have a Certified Electronic Transcriber Certificate. (*Id*.)  As other courts have noted, court reporters and videographers typically have different roles in a deposition and require different certifications and/or training. *See Alcorn v. City of Chicago*, 336 F.R.D. 440, 443 (N.D. Ill. Aug. 20, 2020) ("The court reporter in this case who will stenographically record and transcribe the deposition has declined to certify the accuracy of the Zoom recording as it is not his function. Rather, it is a certified videographer who has the appropriate training[.]")).

     Next, although Plaintiff contends that Mr. Stark will be proofreading the material produced by the Zoom AI Companion and will personally be certifying the transcript as a verbatim recording (ECF No. 165 at 2), as Defendants highlight, a court reporter's role is more complex and nuanced than that.  For example, court reporters have additional duties and responsibilities during the course of the deposition, such as reminding participants to not speak over one another, clarifying names, acronyms, and other unfamiliar terminology, and requesting the spelling of names and words, all with the goal of having a clear record. (ECF No. 171 at 3.)  The Court agrees that a recording plus AI transcription does not fulfill all the roles that court reporters are trained in and have experience handling.  Mr. Stark asserts that the Zoom AI Companion allows him to make real-time modifications and "train" the program while the testimony is being given. (ECF No. 153-1 at 2.)  However, this practice is untested in a real-life deposition setting and could lead to unanticipated delays and problems.  In addition, as Defendants assert, if a party has a problem with a court reporter's services, there is "some oversight, regulation, and a complaint process" (ECF No. 171 at 2), but Mr. Stark is not overseen by a licensing agency to whom Defendants can turn with complaints.  Although Mr. Stark may well possess, or could acquire, the skills that a court reporter brings to bear, he has not been formally trained in the duties of a court reporter, he has not been certified, and he does not yet have experience

serving as a deposition officer.[1]

Furthermore, the Court finds that Defendants have expressed legitimate concerns about giving Zoom's AI platform access to sensitive, confidential information. Plaintiff argues that the Zoom AI Companion does not use any "customer content" to train Zoom and its AI models. (ECF No. 165 at 2.) In making this assertion, Plaintiff relies on the following language from Zoom's website:

> "Data from users' interactions with the AI Companion features may be accessed, processed, and used by Zoom to provide and maintain the services, troubleshoot issues, and provide support. Zoom does not use any of your audio, video, chat, screen sharing, attachments or other communications-like customer content (such as poll results, whiteboard and reactions) to train Zoom's or its third-party artificial intelligence models. This commitment includes the content mentioned in the chart above, such as audio transcripts, used to provide the service."

(*Id*.) However, it is not clear from this disclaimer how the data will be "accessed, processed, and used by Zoom to provide and maintain [] services, troubleshoot issues, and provide support." (*Id*.) Defendants contend that the Zoom AI Companion uses "third-party artificial intelligence models provided by unknown subprocessors," and it is not known if the data is stored or how it is stored. (ECF No. 171 at 2.) This is especially troubling in the instant case, as discovery and probable deposition questions involve confidential material including personnel files and internal affairs investigations. (ECF No. 160 at 2.) The Court finds that providing information designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" in the Protective Order (ECF No. 156) to a third-party platform, especially when it is not transparent how

///

---

[1] This is not to say that Mr. Stark, or someone else with his experience and skills, aided by AI transcription software, would not be an appropriate deposition officer in a different case. For all of the reasons addressed in this order, though, this is not the right case.

the information will be stored and used, violates the Protective Order and is not justified in this case.

The Court finally notes that, generally, the Federal Rules of Civil Procedure allow each party in a case to take a total of ten depositions, limited to one day of seven hours each. *See* Fed. R. Civ. P. 30(a)(2)(A)(i); 30(d)(1). Here, Plaintiff has conducted depositions of four individuals and is opting to take at least thirteen more. (ECF No. 153 at 5.) Plaintiff has argued that the Motion should be granted because taking depositions in the traditional manner is very expensive, but Plaintiff has not demonstrated that taking this many depositions is necessary for the prosecution of his claims.

Because the Court denies Plaintiff's request to conduct depositions utilizing Casey Stark as the creator and certifier of the transcripts, the Court need not address the aspect of the Motion requesting an order approving the use of such transcripts for purposes of motions practice and trial.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 2, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge